Kathleen Gresham DREYER, as Next
Friend of A.D.D. and A.G.D., Minor
Children, Petitioner,

v.

Philip S. GREENE, Respondent.

No. D–1183.

Supreme Court of Texas.

Oct. 27, 1993.

Rehearing Overruled March 30, 1994.

Eugene L. Smith, Rita Miller Fason,
Houston, for petitioner.

John J. Sampson, Austin, Lewis Dickson,
Houston, for respondent.

## OPINION

HECHT, Justice.

Section 13.44(a)(1) of the Texas Family Code provides that a paternity suit "is barred if final judgment has been rendered by a court of competent jurisdiction ... adjudicating a named individual to be the biological father of the child...." The issue we address in this case is whether a finding in a divorce decree that the husband and wife are parents of certain children bars a later action by the children to establish that someone else is their biological father. The trial court held that this paternity suit is barred, and the court of appeals affirmed. 809 S.W.2d 262 (1991). We affirm the judgment of the court of appeals.

In her divorce petition, Kathleen Gresham Dreyer alleged under oath that she and her husband, Thorne Webb Dreyer, were the parents of three children "of this marriage". Thorne did not answer the petition, and the trial court rendered judgment by default. No guardian ad litem was appointed to represent the children. In the final decree, the trial court found that Kathleen and Thorne were the parents of three children as Kathleen had alleged, appointed Kathleen their managing conservator and Thorne their possessory conservator, and ordered Thorne to pay Kathleen child support. When Thorne defaulted on his support obligation, Kathleen sought to enforce it by a motion for contempt—later resolved in an agreed order that Thorne pay Kathleen $54,000. This order, signed by both parties, contained a finding that the three children named in the divorce decree were born during Kathleen and Thorne's marriage. Less than two months after the order was signed, Kathleen

initiated this proceeding as next friend for two of her children, A.D.D. and A.G.D., twin boys then five years old, to establish that Philip S. Greene, rather than Thorne, is their biological father. Their petition requested that the trial court order blood tests and conduct a hearing. The trial court refused and instead granted Greene's motion to dismiss the action as barred by section 13.44 of the Family Code.

■ Kathleen contends that the trial court's findings do not bar this action by her twin sons. The finding that Thorne was the parent of the children, she argues, is not an adjudication that he is their biological father because a man can be the parent of a child without being the biological father. While this argument is certainly correct, it ignores the context of the trial court's finding in this case. The court found that Kathleen and Thorne were the "parents" of their children. It is implausible that the court would have chosen this single word to refer, without qualification or explanation, to both the biological relationship between Kathleen and the children and some other relationship involving Thorne. It is even more implausible when the finding was clearly based on Kathleen's sworn allegation that the children were "of the marriage". *See Espree v. Guillory*, 753 S.W.2d 722, 724 (Tex.App.—Houston [1st Dist.] 1988, no writ) ("[a] finding of fact by the trial court in a divorce judgment that a child was born to the marriage of the parties is equivalent to a finding that the husband is the father of the child...."); *Walters v. Walters*, 565 S.W.2d 586, 587 (Tex.Civ.App.—Austin 1978, no writ); *Thompson v. Thompson*, 572 S.W.2d 761, 764–765 (Tex.Civ.App.—Tyler 1978, no writ). We conclude that the trial court's findings constitute an adjudication that Thorne was the biological father of A.D.D. and A.G.D.[1] Since there is no question that the trial court had jurisdiction to make this determination, it operates as a bar under section 13.44 to the present action.[2]

■ Kathleen argues that such an application of section 13.44 impermissibly infringes upon her sons' rights to due process and equal protection of the law under the United States Constitution. However, Kathleen did not make this argument in the trial court. As a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal. *Wood v. Wood*, 159 Tex. 350, 320 S.W.2d 807, 813 (1959); *Walker v. Employees Retirement Sys.*, 753 S.W.2d 796, 798 (Tex.App.—Austin 1988, writ denied). We follow that rule here and thus do not address Kathleen's constitutional arguments.

The judgment of the court of appeals is *Affirmed.*

GAMMAGE, Justice, dissenting.

In an effort to prevent what it purports to be a mother's "recovery" for her own obviously inconsistent statements, the majority today runs roughshod over the rights of the minor children for whose protection the legislature enacted the paternity provisions in question. I would hold that the mother's default recovery in a divorce action is not an "adjudication" of paternity binding on the minor children under section 13.44 of the Family Code. Accordingly, I dissent.

The issue is one of statutory construction. The default decree in the divorce case should not be an "adjudication" under section 13.44 for three reasons. First, the express statutory language and legislative history do not require it. Second, the statute should be given a construction to avoid doubt about its constitutionality. Finally, our policy to preserve the rights of minors, particularly those not represented by attorneys ad litem,

---

1. The dissent attempts to minimize the significance of the trial court's finding by emphasizing that it was made in a judgment taken against Thorne by default. The dissent fails to deal with the facts that Kathleen swore that Thorne was a parent of her children, that based upon this avowal she obtained a judgment against Thorne for child support, that Thorne paid child support and Kathleen accepted it, that when Thorne defaulted in the payment of his obligations he and Kathleen signed an agreed order requiring him to pay support, and that only after Thorne had difficulty meeting his obligation did Kathleen sue Phillip to establish his paternity of two of her three children.

2. We express no opinion on whether A.D.D. and A.G.D. could have the finding of Thorne's paternity set aside by bill of review.

should require that a mere recitation in an uncontested default divorce is not a binding "adjudication" of paternity as to children unrepresented by counsel.

## I

The literal terms of the statute [1] do not require that a default divorce decree which merely recites the children are "of the marriage" be deemed as "adjudicating ... the biological father." There simply is no litigation of biological paternity in such a divorce decree. Indeed, one court of appeals has already written that the effect of such a recital in a default divorce decree is to leave in place, as between the parties to the divorce, the presumption that the child born during the marriage is that of the husband, and thus does not litigate paternity. *Espiricueta v. Vargas,* 820 S.W.2d 17, 19 (Tex. App.—Austin 1991, writ denied) [cited with general approval in *Attorney General v. Lavan,* 833 S.W.2d 952, 955 (Tex.1992) ]. This view is consistent with our statement that lack of actual litigation is a significant factor in addressing such statutory construction questions, and that conjoining standing under section 12.06 with paternity suits under section 13.01 is proper. *See Lavan,* 833 S.W.2d at 954–55.[2]

The legislative history of the section likewise does not suggest such a "boiler plate" recital in a default divorce decree is an adjudication. The statute was adopted in 1987 as Senate Bill 1123, sponsored by Senator Armbrister of the Senate Judiciary Committee. The committee's bill analysis indicates the concern was to "restore[ ] the concept of voluntary legitimation ... in a manner consistent with the substance of the Supreme Court's [*In Interest of Baby McLean,* 725 S.W.2d 696 (Tex.1985) ] decision," i.e., to insure a constitutional legitimation procedure. SENATE COMM. ON THE JUDICIARY, BILL ANALYSIS, Tex. S.B. 1123, 70th Leg. (1987), at 1. The *Baby McLean* decision held that the legitimation procedure had to allow the man asserting fatherhood a chance to prove his case and obtain the rights of a parent, even if the mother refused to grant them to him. *Id.* In short, it was a purpose of the statute to *broaden* the rights of parties claiming parenthood, to meet constitutional requirements.

The original bill as passed by the Senate did not contain what is now section 13.44. It was added as a committee amendment from the House Judiciary Committee, after the senate bill had been referred to the House of Representatives. The amendment was adopted without objection in the House, adopted without comment by the House–Senate Conference Committee, and adopted by both houses apparently without debate. H.J.

---

1. TEX.FAM.CODE ANN. § 13.44 (Supp.1993) provides:

   (a) Except as provided by Subsection (b) of this section, a suit under this chapter with respect to a child is barred if final judgment has been rendered by a court of competent jurisdiction:

   (1) adjudicating a named individual to be the biological father of the child; or

   (2) terminating the parent-child relationship between the child and each living parent of the child; or

   (3) granting a petition for the adoption of the child.

   (b) During the pendency of an appeal or direct attack on a judgment described in Subsection (a) of this section, a suit under this chapter may be filed but shall, upon motion of any party, be stayed pending the final disposition of the appeal or direct attack on the judgment.

2. The legislature, in direct response to *Lavan,* has again shown its deference to making the process in the Family Code meet constitutional standards by adopting amendments that essentially incorporate the *Lavan* standards. Section 13.01, as amended, makes no reference to standing requirements, but defers to section 12.06. The latter section now applies to a presumed father under section 12.02 of the Code, not just the marital presumption, and expressly grants standing to question presumed paternity to a governmental entity, the mother or the presumed father. Further, the amendments state they apply "to a pending paternity proceeding without regard to whether the proceeding was commenced before, on, or after the effective date of those sections." Act of Aug. 30, 1993, ch. 730, § 16(b), 1993 Tex.Sess.Law Serv. 2866, 2873 (Vernon).

   Note that the statute does not expressly grant standing to a man asserting himself to be the biological father. We have held that at least where the father has promptly assumed his parental responsibilities, the purported biological father must have the right to assert his paternity and rebut the presumed paternity of the mother's

OF TEX., 70th Leg., Reg.Sess. 3578–79 (1987). The logical conclusion is that a child would have only one legitimated father under the process, since otherwise there was the possibility a child could have two or more legitimated fathers, raising a problem of competing paternal parental rights the Family Code is ill-designed to handle. But the point is that a child would have *one legitimation under chapter 13*—not that the child would have no right because the child's mother had obtained a default divorce decree that was neither correct as to the biological father nor in the child's best interest. The bare recitation that the children were "of the marriage" is *not* the statutory finding required by section 13.44, which by its terms is that "a *named individual* [is] the *biological father* of the child." (Emphasis added.) I have found nothing in this sparse legislative history of section 13.44 to indicate the purpose of the legislature to make divorce decrees or other proceedings, *except those in which paternity is actually litigated and in issue as in chapter 13*, binding as an "adjudication" under the section.

## II

The second reason for construing these facts as not constituting "adjudication" is deference to constitutional concerns. It may be, as the majority asserts, that petitioners have failed to preserve their constitutional arguments. That does not, however, eliminate all constitutional concerns in construing the statute. It is an established principle of statutory construction that the legislature is presumed to have intended the construction that makes the statute constitutional. TEX. GOV'T CODE ANN. § 311.021(1) (Vernon 1988) (Code Construction Act). The due course of law provision under the Texas Constitution provides protection to certain purported biological fathers seeking to assert their claims to paternity. *In the interest of J.W.T.,* —— S.W.2d —— (Tex.1993). It seems to me that the *children themselves* would necessarily have the same right, under due course of law,

to assert their claims of paternity against their actual biological father, even if their mother in a default divorce decree has claimed otherwise. The construction of the statute which avoids this serious constitutional problem is that the nominal recitations of "to the marriage" in the default divorce decree do not, as to the children, constitute an uncontestable "adjudication" of paternity under section 13.44.

## III

Third, I believe the court should hold the minor children are not barred from asserting paternity against Greene because their interests were not adequately represented in the proceedings which produced the divorce decree. The twins' mother apparently was not protecting their interests when she sought child support for them from her ex-husband. The mother had an interest at least potentially contrary to the children's right to support from their biological father.[3] Further, she may have had an emotional or social interest in hiding the fact that their biological father was different from their presumed father. No attorney ad litem was appointed, and the children had no independent representation in the divorce proceedings.

In this situation, the recitations of a default divorce decree should not bind the children. Surely before these children are to be bound by an "adjudication" under section 13.44 naming their paternal parent, a finding must be made that their interests were adequately represented. No such finding has been made here, nor can it be. Minor children are wards of the court subject to its supervision. *Knollhoff v. Norris,* 152 Tex. 231, 235, 256 S.W.2d 79, 82 (1953). The court may appoint an attorney ad litem to represent their interests. TEX.FAM.CODE ANN. § 11.10(a) (Vernon 1993); *Villalpando v. De la Garza,* 793 S.W.2d 274, 277 (Tex.App.— Corpus Christi 1990, no writ) (statutory authority applies to paternity suits). I do not mean to suggest that an attorney ad litem

husband. *In the interest of J.W.T.,* 1993 WL 233448 (Tex.1993).

**3.** The majority lets the mother's actions harm the children's legal interest. It is the *children's* legal rights that are at stake, not the mother's. The mother collects child support only on behalf of

the children. The support is for the children. If for some reason the children's managing conservator were changed tomorrow, this court's opinion would still bar their effort under the statutes addressed in this opinion to collect child support from their alleged biological father.

must be appointed every time a minor's rights are involved. Where there is an apparent or recognized potential conflict with the interests of the adult purporting to represent the minor's interests, the court should appoint an ad litem.[4] Here, either the trial judge did not intend the divorce decree's recitation to be an "adjudication" under section 13.44, or the court's failure to examine the potential conflict and appoint an attorney ad litem means we should not sustain its findings on appeal or other direct attack. With these concerns for the protection of minors' rights, it is singularly disingenuous for this court to declare here that the legislature meant to have these minors' parentage "adjudicated" by that perfunctory default proceeding in which they had no separate representation.

For these reasons, I respectfully dissent.

PHILLIPS, C.J., joins only in Part I of this dissenting opinion.

DOGGETT, J., joins in this dissenting opinion.

---

4. When there is any potential conflict, this court has gone so far as to suggest it may be error subject to *per se* reversal on appeal or direct attack to adjudicate a minor's rights when the minor does not have proper separate representation. *Missouri–Kansas–Texas RR. Co. v. Pluto*, 138 Tex. 1, 5–8, 156 S.W.2d 265, 268–69 (1941); *see also Sisk v. Duck*, 593 S.W.2d 416, 417 (Tex. Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.).