**In the Interest of A.L.J., a/k/a A.L.E., a child.**

No. 12–95–00038–CV.

Court of Appeals of Texas, Tyler.

May 31, 1996.

Rehearing Overruled Oct. 2, 1996.

Daniel B. Childs, Jacksonville, for appellant.

Robert Christopher Day, Steven R. Guy, Jacksonville, for appellee.

HADDEN, Justice.

This is an appeal from an order of dismissal in a suit to establish paternity. Melinda Sue Dillingham ("Dillingham")[1], mother of the child, A.L.J., brought suit seeking to establish that Ross Kendall Hicks ("Hicks") was the biological father of the child. Hicks responded with a motion for summary judgment and a plea in bar asserting, *inter alia,* the affirmative defense of *res judicata.* He claimed that in a previous divorce case, Robbie Lynn Jacobs ("Jacobs"), had already been adjudicated as the biological father of A.L.J., and therefore, her suit was barred. After a hearing on November 16, 1994, the trial court granted the plea in bar and the motion for summary judgment, dismissed the suit with prejudice, and ordered that Dillingham and A.L.J. take nothing. Dillingham assigns fifteen points of error. We will affirm.

In its "Order of Dismissal," the trial court made several "findings" and then stated that Hicks' "Motion for Summary Judgment and Plea in Bar are well taken and should be in all things GRANTED." The court then:

> ... ORDERED, ADJUDGED AND DECREED that the present suit is dismissed in all things as to the respondent, ROSS HICKS, and that judgment is hereby entered in his favor further specifying that Petitioner, MELINDA SUE DILLINGHAM, and [A.L.J.] shall each take nothing. This suit is dismissed with prejudice to the rights of MELINDA SUE DILLINGHAM and/or [A.L.J.] to refile same or any part thereof against ROSS HICKS....

We will first address the unusual procedural posture of the case. *Res judicata* is an affirmative defense under Tex.R. Civ. P. 94 and should be treated as a plea in bar, which reaches the merits of the case. *Walker v. Sharpe,* 807 S.W.2d 442, 446 (Tex.

---

**1.** Dillingham is also referred to as "Melinda Sue Edwards" and "Melinda Sue Edwards Jacobs" in certain quoted passages from prior proceedings.

App.—Corpus Christi 1991, no writ). A plea in bar may not properly be sustained at a preliminary hearing unless the parties agree to this procedure or a summary judgment procedure is utilized. *Walker*, 807 S.W.2d at 447; *Kelley v. Bluff Creek Oil Co.*, 158 Tex. 180, 309 S.W.2d 208, 214 (Tex.1958). The proper procedure in sustaining a plea of *res judicata* is to render a take-nothing judgment in favor of a defendant. *Walker*, 807 S.W.2d at 447 n. 2. Here, the summary judgment procedure was utilized, and judgment was rendered that the suit be dismissed with prejudice and that Dillingham and A.L.J. take nothing. Therefore, Hicks' plea in bar was properly considered by the trial court, and we will review the case as a motion for summary judgment. *See Walker*, 807 S.W.2d at 447.

The summary judgment evidence includes a certified copy of the birth certificate of A.L.J., a certified copy of the marriage license of Dillingham and Jacobs, an affidavit by Hicks, and an affidavit by Dillingham. Exhibits attached to the plea in bar include true and correct copies of the pleadings and decree on file in Cause No. 90–2–111, styled: "In the Matter of the Marriage of Melinda Sue Edwards Jacobs and Robbie Lynn Jacobs, and in the Interest of A.L.J., a Minor." The trial court took judicial notice of the pleadings and court decision in that case.

In the previous divorce case, Dillingham averred that she and Jacobs were the "parents" of A.L.J. Furthermore, in seeking termination of the parent-child relationship, Dillingham alleged that Jacobs was the "father" of A.L.J. In the divorce decree, the trial court found that Jacobs was duly cited and made default by failing to appear. The court recited in its decree that it had heard evidence, and found that the material allegations in petitioner's pleadings were true including the allegations that Dillingham and Jacobs were the "parents of A.L.J." The court also ordered that the "parent-child relationship between Jacobs and A.L.J. be terminated."

In her first point of error, Dillingham contends that the court erred in dismissing her suit because the prior divorce decree makes no finding as to the "father" of the child, and because the decree against Jacobs was taken by default. Dillingham argues that the finding that Jacobs was the parent of the child, A.L.J., was not an adjudication under the statute that Jacobs was A.L.J.'s biological father. She maintains that a man can be the parent of a child without being the biological father.

Section 13.44 of the Texas Family Code [2] provides, in pertinent part, that:

(a) ... a suit under this chapter with respect to a child is barred if final judgment has been rendered by a court of competent jurisdiction:

(1) adjudicating a named individual to be the biological father of the child; ...

TEX. FAM.CODE ANN. § 13.44(a)(1) (now section 160.007(a)(1)).

Whether a default judgment in a divorce case adequately adjudicates the issue of biological fatherhood was addressed by the Texas Supreme Court in *Dreyer v. Greene*, 871 S.W.2d 697 (Tex.1993). In *Dreyer*, the issue addressed was substantially similar to the issue in the present case: whether a finding in a divorce decree that the husband and wife are parents of certain children bars a later action by the children to establish that someone else is their biological father. The trial court held that the paternity suit was barred, and this decision was affirmed by the court of appeals and the Texas Supreme Court. *See Dreyer*, 871 S.W.2d at 698. In upholding the decision, the Supreme Court reasoned that "it is implausible that the court would have chosen this single word (parents) to refer, without qualification or explanation, to both the biological relationship between [the wife] and the children and some other relationship involving [the husband]." *Id.; see also Espree v. Guillory*, 753 S.W.2d 722, 724 (Tex. App.—Houston [1st Dist.] 1988, no writ) (a finding of fact by the trial court in a divorce judgment that a child was born to the mar-

---

**2.** The Texas Family Code was extensively reorganized and recodified by the Texas Legislature in 1995. *See* Act of April 20, 1995, 74th Leg, R.S., ch. 20, 1995 Tex. Sess. Law Serv. 113. All references to the Code herein, however, will be to the provisions in effect at the time of the suit, with parenthetical references to the current corresponding Code provisions.

riage of the parties is equivalent to a finding that the husband is the father of the child).

As in *Dreyer*, we cannot ignore the context of the trial court's finding in the divorce decree. Dillingham alleged that Jacobs was the father of A.L.J. The court stated that it had heard evidence and found that these allegations were true, and that Dillingham and Jacobs were the parents of A.L.J. It further ordered that the parent-child relationship between Jacobs and A.L.J. be terminated. Dillingham nevertheless argues that such a default judgment did not specifically adjudicate the issue of whether the husband or presumed father is the biological father. She cites the case of the *Attorney General of Texas v. Lavan*, 833 S.W.2d 952 (Tex.1992) in support of her position. We do not agree with these assertions. In *Lavan*, no order from the prior divorce case purported to adjudicate the child's paternity because the child, who later sought to establish biological paternity, was not named in the original divorce suit. Therefore, the paternity between the child and the presumptive father was not adjudicated in that case. *See Lavan*, 833 S.W.2d at 953. We conclude, therefore, that the court's findings in the prior divorce case constitute an adjudication that Jacobs was the biological father of A.L.J. Point of error number one is overruled.

■ In point of error number two, Dillingham asserts that the finding in the prior divorce decree is not a bar to her subsequent paternity action because no guardian *ad litem* was appointed for the child therein, and, therefore, the child was not adequately represented. However, we must presume that the child's interests were adequately represented by the mother in the prior divorce proceeding since there is no indication in the record that the judgment was directly attacked. To protect the interest of the child, TEX. FAM.CODE ANN. § 11.10(a) provides that:

(a) In any suit in which termination of a parent-child relationship is sought, the court ... shall appoint a guardian *ad litem* to represent the interests of the child ... unless the court ... finds that the interests of the child will be represented adequately by a party to the suit and are not adverse to that party.

TEX. FAM.CODE ANN. § 11.10(a) (now section 107.001(a)(3)).

The court in the prior divorce case found that the interests of A.L.J. would be adequately represented by her mother, Dillingham, that the interests of A.L.J. and Dillingham were not adverse, and that there was no need to appoint a guardian *ad litem* for the benefit of the child, A.L.J. The court's actions in allowing Dillingham to represent the child were not challenged on direct appeal from the divorce proceedings and will not be addressed here. Point of error number two is overruled.

■ In point of error three, Dillingham asserts that the dismissing of her suit violates the child's due process rights under the Fourteenth Amendment of the United States Constitution, section 1, and the child's due course of law rights under Article 1, section 19 of the Texas Constitution. In support of this position, Dillingham cites *In the Interest of J.W.T.*, 872 S.W.2d 189 (Tex.1994). We do not agree. In *In the Interest of J.W.T.*, the Texas Supreme Court addressed the issue of whether a claimed biological father had standing to establish his paternity where the statutory scheme deprived him of doing so. No question of standing exists here. Under Texas statutory law, a parent of a child has standing to establish paternity. TEX. FAM. CODE ANN. § 11.03(a) (now section 102.003(a)). And, since paternity was established in the prior divorce proceeding, we must presume that the rights of A.L.J. were adequately represented and adjudicated by her mother in the prior divorce action. Point of error three is overruled.

In point of error four, Dillingham complains that the court found that all prerequisites to the entry of judgment had occurred or had been waived. She further complains in point of error fourteen that there was no hearing on the motion for summary judgment. However, Dillingham does not indicate what prerequisites are lacking, nor does she furnish any authority for her position. Failure to brief grounds of error or to cite any authorities presents nothing for review. TEX.R.APP. P. 74(f). However, in the interest of justice, we will briefly address these

points. Hicks filed his motion for summary judgment with documents attached. Dillingham filed a response to the motion for summary judgment with her affidavit attached. Hicks filed his plea in bar with exhibits of prior court proceedings attached, and requested that the court take judicial notice of the proceedings. On September 30, 1994, the trial court issued an "Order Setting Hearing" notifying all attorneys of record that on October 13, 1994, it would hold a hearing on the motion for summary judgment, the plea in bar, and the motion for paternity testing. The record discloses that on October 13, 1994, the trial court conducted a hearing and signed the "Order of Dismissal" on November 16, 1994. At that hearing, Dillingham's attorney had the opportunity to argue the motion for summary judgment, as well as the plea in bar. Having examined the record, we fail to see wherein "all prerequisites" to judgment have not occurred. We see no irregularity in these proceedings and Dillingham cites none. Points of error numbers four and fourteen are overruled.

In points of error five and thirteen, Dillingham alleges that the court did not take judicial notice of the pleadings and decree on file in the previous divorce suit and that, if it did, it erred in doing so. She contends that the taking of such notice, without introduction of the documents into evidence, denies her the right to object, the right to confront the evidence, and her rights of due process under the United States and Texas Constitution. Again, we do not agree. There is no requirement that a party must offer a domestic judgment pursuant to the Rules of Evidence in order that the court take judicial notice of the document. *Langdale v. Villamil,* 813 S.W.2d 187, 190 (Tex.App.—Houston [14th Dist.] 1991, no writ). Furthermore, a court may take judicial notice of a document whether requested or not, *see* TEX.R. CIV. EVID. 201(c), and may take notice at any stage of the proceedings. *See* TEX.R. CIV. EVID. 201(f). Hicks requested that the court take judicial notice of the prior proceedings in his plea in bar, and at the hearing on the plea in bar and motion for summary judgment. The court noted during the hearing and in its order that it had taken judicial notice of the proceedings. At that hearing,

the court had before it copies of the prior divorce proceedings. We, therefore, hold that the court properly took judicial notice of the prior divorce proceeding. Points of error five and thirteen are overruled.

Next, Dillingham complains in points of error six through twelve that the trial court made findings in its order that are not supported by the record. Findings of fact and conclusions of law are inappropriate and have no place in a summary judgment proceeding. *Fulton v. Duhaime,* 525 S.W.2d 62 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). However, it is not necessarily error to make them. *Singleton v. LaCoure,* 712 S.W.2d 757, 761 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). They may be disregarded on appeal as harmless. *Samaniego v. El Paso Towing, Inc.,* 836 S.W.2d 702 (Tex.App.—El Paso 1992, writ denied). Nevertheless, Dillingham assigns error to these findings and contends that there is no evidence and, in the alternative, insufficient evidence to support them. However, in a summary judgment case such as this, Hicks simply has the burden to show that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). A defendant moving for summary judgment on an affirmative defense must conclusively prove all elements of that defense. *Swilley,* 488 S.W.2d at 67. In considering whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant is taken to be true. *El Chico v. Poole,* 732 S.W.2d 306 (Tex.1987). Every reasonable inference is indulged in favor of the non-movants and any doubts are resolved in their favor. *Nixon,* 690 S.W.2d at 549. Accordingly, we hold that these "findings" by the trial court are inappropriate and have no place in this summary judgment proceeding. However, it was not error for the court to make them. Therefore, we disregard them here on appeal and address the case under the above standard of review for summary judgment cases. Points of error six through twelve are overruled.

■ Finally, in point of error number fifteen, Dillingham asserts that the trial court erred in dismissing the paternity action because the previous final decree of divorce terminated the parent-child relationship between the child, A.L.J., and Jacobs. Apparently, Dillingham argues that the termination of a parent-child relationship between a child and a presumed father who has been judicially declared the biological father opens the door for another man to be declared the biological father. We reject this reasoning. The Family Code simply provides that a man is presumed to be the biological father of a child if the child is born during the marriage of the man and the biological mother. TEX. FAM.CODE ANN. § 12.02(a)(1) (now section 151.002(a)(1)). Such is the case here. The child was born during the marriage of Dillingham and Jacobs. Jacobs, therefore, was presumed to be the biological father of the child. Moreover, the court adjudicated Jacobs to be the biological father in the previous divorce case, thus barring the suit by the child. See TEX. FAM.CODE ANN. § 13.44(a)(1) (now section 160.007(a)(1)). The termination of the relationship between the two as parent and child does not disestablish the prior adjudication of biological fatherhood. It is this prior adjudication which closes the door to A.L.J. *Dreyer,* 871 S.W.2d at 698. Point of error number fifteen is overruled.

■ In one cross-point, Hicks seeks to recover damages as sanctions because he alleges that Dillingham's appeal is frivolous. In assessing a penalty for a frivolous appeal, we must determine that Appellant had no reasonable grounds to believe that the judgment below would be reversed and that the appeal was not taken in good faith, but for delay only. *Stewart v. Texco Newspapers, Inc.,* 734 S.W.2d 175, 177 (Tex.App.—Houston [1st Dist.] 1987, no writ). We do not believe that Dillingham's appeal rises to this level of frivolousness. In arguing her appeal, Dillingham attempted to distinguish this case from the majority decision in the *Dreyer* case, and adopted some of the reasoning in the three-justice dissent. Moreover, Dillingham raised other plausible constitutional and procedural points. We, therefore, conclude

that, although several of Dillingham's points of error were not properly briefed, it was not unreasonable for Dillingham to believe that judgment could be reversed. Hicks' cross-point of error is overruled.

Concluding that the trial court committed no error, this case is in all things affirmed.

HOLCOMB, Justice, dissenting.

I respectfully dissent. I view the majority opinion as having the effect of depriving a twelve year old child of her constitutional substantive due process right under the Texas Constitution to have her biological parent adjudicated pursuant to TEX. FAM.CODE ANN. § 13.44(a)(1) (Supp.1993).

The majority mainly relies upon *Dreyer v. Greene,* 871 S.W.2d 697 (Tex.1993)[3] to reach the conclusion that a child has no standing to again address the paternity issue where a previous default divorce decree had been entered in which the presumed father was named the father of the children, holding that this finding was an implied *adjudication* that he is also the biological father, therefore barring that issue being re-litigated. The present case differs from *Dreyer* as the majority in *Dreyer* did not address the due process constitutional questions arising under Article 1, Section 19 of the Texas Constitution as they were not preserved in the trial court. In the present case they are adequately and properly preserved. Additionally, in the present case, there was a termination of the parental rights of the presumed father without appointing a guardian *ad litem.* The majority finds no error in the trial courts finding that the mother's and child's rights were not in conflict making it unnecessary to appoint a guardian *ad litem.* I disagree because the termination would deprive the child of possible future support, there was an inherent conflict between the mother and the child in this proceeding necessitating an appointment of an attorney *ad litem* who would have at least explored evidence as to paternity. The controlling facts are markedly different than those in *Dreyer.* In *Dreyer* the twins which were the subject of the suit were possibly conceived in an adulterous re-

**3.** Three justices dissented. Justice Gammage wrote the dissent.

lationship during the marriage. In this case the summary judgment evidence showed the Appellee had sexual relations with the mother of the child prior to the marriage to the presumed father, with her being approximately six months pregnant. Appellee does not deny sexual relations with the mother during the time of possible conception but states that he was incapable of being the father which has been medically corrected. I agree and adopt here Justice Gammage's reasoning on this issue as pointed out in his dissent in *Dreyer v. Greene* and specifically when he states:

> The literal terms of the statute (TEX. FAM.CODE ANN. § 13.44) do not require that a default divorce decree which merely recites the children are "of the marriage" be deemed as 'adjudicating . . . the biological father.'" There simply is no litigation of biological paternity in such a divorce decree. Indeed, one court of appeals has already written that the effect of such a recital in a default divorce decree is to leave in place, as between the parties to the divorce, the presumption that the child born during the marriage is that of the husband and does not litigate paternity. *Espiricueta v. Vargas,* 820 S.W.2d 17, 19 (Tex.App.—Austin 1991, writ denied); cited with general approval in *The Attorney General of Texas v. Lavan,* 833 S.W.2d 952, 955 (Tex.1992).

and further:

> The due course of law provision under the Texas Constitution provides protection to certain purported biological fathers seeking to assert their claims to paternity." *In the Interest of J.W.T.,* 872 S.W.2d 189 (Tex.1994). It seems to me that the children themselves would necessarily have the same right, under due course of law, to assert their claims of paternity against their actual biological father, even if their mother, in a default divorce decree, has claimed otherwise. The construction of the statute which avoids this serious constitutional problem is that the nominal recitations of "to the marriage" in the default divorce decree do not, as to the children, constitute an uncontestable "adjudication of paternity under section 13.44.

The child's interests were not adequately represented and the child should not be bound by the judgment insofar as it could be construed to adjudicate paternity. The Supreme Court has suggested that it may be error subject to *per se* reversal on appeal or a direct attack to adjudicate a minor's rights when the minor does not have proper separate representation. *Missouri–Kansas–Texas RR. v. Pluto,* 138 Tex. 1, 156 S.W.2d 265 (1941). I end this dissent with a further quote from Justice Gammage in *Dreyer.* It "[i]s singularly disingenuous for this court to declare here that the legislature meant to have these minors' parentage "adjudicated" by that perfunctory default proceeding in which they had no separate representation."

For these reasons, I respectfully dissent.