TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00515-CV








Kay Frances Hunt, Appellant



v.



Dorothy Auten; Bobby Arnold; Von Reece, Independent Executor of


Estate of Murray Maurice Owens; Murray Maurice Myers; Lisa Myers Ray; 


Patricia Knezevich; Andrea Conwright; Alonda Johnson, Appellees (1)







FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY


NO. 68,004, HONORABLE GUY S. HERMAN, JUDGE PRESIDING








 Kay Frances Hunt ("Kay") appeals from a summary judgment of the probate court
denying her claim of a right to inherit the estate of Murray Maurice Owens ("Owens"), deceased. 
We will reverse the judgment and remand the cause to the probate court.


THE CONTROVERSY


 Owens died intestate and a widower. Dorothy Auten and Bobby Arnold
("appellees") commenced a probate proceeding for the administration of his estate in behalf of
Owens's creditors and his collateral kindred. Kay intervened. Kay alleged she was Owens's
biological child, born to Myrtle Hunt who was never married to Owens, and Owens's primary heir
entitled to letters of administration and his entire estate. On these allegations, she requested that
the probate court determine her right of inheritance. See Tex. Prob. Code Ann. § 42(b)(1) (West
1996). (2) Kay's summary-judgment "evidence" (the results of a DNA comparison), if believed,
would establish that Owens is almost certainly her biological father.

 Appellees recovered summary judgment that Kay's action was barred under the
doctrine of collateral estoppel, based on a finding that in a previous divorce action brought by
Myrtle Hunt (Kay's biological mother) against George Hunt, the court had rendered in 1960 a final
decree in which George was adjudicated to be Kay's biological father. (3) See Dreyer v. Greene, 871
S.W.2d 697, 698 (Tex. 1994); In re A.L.J., 929 S.W.2d 467, 470-71 (Tex. App.--Tyler 1996, no
writ); B.M.L. v. Cooper, 919 S.W.2d 855, 859 (Tex. App.--Austin 1996, no writ). In her verified
petition in the divorce action, Myrtle had declared that "[o]ne child has been born of" her marriage
to George, "a daughter, Kay Frances Hunt, who was born on January 4, 1945." Myrtle prayed
to be awarded custody of Kay and for certain other relief. Myrtle and George were each
represented in the cause by counsel; no guardian or attorney ad litem was appointed to represent
Kay's interest. The decree rendered in the cause dissolved the marriage of Myrtle and George
Hunt on "grounds of cruelty," awarded custody of Kay to Myrtle, and gave George a right of
visitation "at reasonable times and places" and ordered him to "contribute the sum of $40 monthly
toward the support and maintenance of his daughter, Kay Frances Hunt," until she reaches age
eighteen, said sum to be in addition to a $42 monthly payment made for Kay's support by the
Social Security Administration. The decree set aside the parties' homestead for the use and benefit
of Myrtle and Kay, "the minor daughter of" the parties, until she married or reached age twenty-one, whichever occurred first, and awarded Kay $400 held in a savings account bearing Kay's
name, subject to Myrtle's control until Kay married or reached age twenty-one, whichever
occurred first. Finally, the decree permanently enjoined George from "threatening, intimidating,
harassing, molesting, or harming" Myrtle or Kay.

 The issue on appeal is whether the probate court properly applied the doctrine of
collateral estoppel based on the 1960 divorce decree as an adjudication that George was Kay's
biological father. See Tex. Fam. Code Ann. § 160.007(a)(1) (West 1996). Kay contends the
probate court erred in that regard for the reasons now to be discussed.




DISCUSSION AND HOLDINGS


 The supreme court held in Dreyer that a divorce decree, rendered after a husband's
failure to answer in the cause, implicitly adjudicated that he was the biological father of a child as
contemplated in section 160.007(a)(1) of the Family Code. The court found as it did based on the
papers filed in the earlier cause. In her verified petition, the wife had averred that her children
were "of this marriage"; the divorce decree found that she and her husband were the "parents" of
the children, appointed her managing conservator and him possessory conservator, and ordered him
to pay child support; and, in a court order ruling on the wife's contempt motion, the court found
the children were born during the marriage. These passages, in the court's view, amounted to an
implicit adjudication that the husband was the children's biological father. See Dreyer, 871
S.W.2d at 697-98.

 The similarity and application of the Dreyer decision to the present action are
obvious. If anything, the record in the 1960 Hunt divorce yields a stronger implication that the
resulting decree adjudicated that George was Kay's biological father--the decree dissolving Myrtle's
marriage to George was rendered not after a default but after a contested trial in which "all matters
of fact . . . were submitted to the" judge for decision based on "the evidence adduced," and the
parties' respective attorneys of record approved the form of the decree. Kay attempts to distinguish
Dreyer, however, on the following grounds.

 The doctrine of collateral estoppel or issue preclusion requires a showing (1) that
the facts sought to be litigated in the second action were fully and fairly litigated in the first action;
(2) that those facts were essential to the judgment in the first action; and (3) that the parties were
cast as adversaries in the first action. See Sysco Food Servs., Inc. v. Trapnell, 890 S.W.2d 796,
801 (Tex. 1994); B.M.L., 919 S.W.2d at 858. To extend to Kay the preclusive effect of the 1960
divorce decree requires that she be in "privity" with Myrtle. The relationship of "privity" means
an identity of interests, so that in legal effect Myrtle represented in the divorce action the same
interest claimed by Kay in the present action. See Benson v. Wanda Petroleum Co., 468 S.W.2d
361, 363 (Tex. 1971). Kay contends on appeal that nothing in the summary-judgment record
establishes prima facie the necessary identity of interests, an issue on which the appellees bore the
burden of proof.

 We overrule this contention based on Dreyer. That decision necessarily holds that
the children's interest in establishing biological paternity in a divorce action is the same interest
possessed by the mother in establishing their biological paternity therein. Otherwise, the Dreyer
decision could not rest, as it does, on the grounds of res judicata and collateral estoppel. See
Dreyer, 871 S.W.2d at 697-98.

 Kay contends next that her interest was not fully and fairly litigated in the 1960
divorce proceeding between Myrtle and George.

 The doctrine of collateral estoppel cannot constitutionally bar Kay's present action
unless her interest was fully and fairly litigated in the 1960 divorce action brought by Myrtle
against George. See Trapnell, 890 S.W.2d at 801; Restatement (Second) of Judgments § 70(1)(b)
(1982). We have held, for example, that an earlier final judgment procured by fraud cannot give
rise to a collateral estoppel; and whether fraud was practiced in that regard may depend upon
disputed issues of fact that preclude summary judgment in a later paternity action. See B.M.L.,
919 S.W.2d at 861.

 The 1960 divorce decree dissolving the marriage of George and Myrtle, and the
latter's sworn petition in that cause, established prima facie the elements of collateral estoppel. 
Cf. Dreyer, 871 S.W.2d at 697-98 (declarations in divorce decree, sworn petition, and contempt
order established elements of res judicata and collateral estoppel). Unlike Dreyer, however, we
find that parts of the summary-judgment record here raise a genuine issue of material fact
concerning whether Kay's interest in her biological paternity was fully and fairly litigated in the
1960 divorce action brought by Myrtle against George.

 Kay argues in her brief that Myrtle lied under oath in her divorce petition when she
swore that George was Kay's father; that Myrtle did so because she feared revealing her adultery
to George, who had assaulted her in the past; and that Myrtle feared for herself and George the
social stigma associated with her adultery if it were revealed. These claims are supported
somewhat by parts of the summary-judgment record. In her deposition, Kay swore that she first
learned on October 3, 1958, that Owens rather than George was her biological father, and that
Myrtle admitted that fact to Kay within the same week. This testimony, if believed, would
establish that Myrtle knowingly falsified her 1960 divorce petition in which she swore that George
was Kay's father. Kay swore further in her deposition that she did not make an earlier claim
against George "[b]ecause of the stigma that" he and Myrtle would feel. And in an affidavit
opposing appellees' motion for summary judgment, Kay swore that Myrtle demanded that Kay "do
nothing to embarrass [George] within our community. . . . The stigma of having an illegitimate
[sic] child shamed her [Myrtle], but wouldn't be allowed to taint him [George]." (4) And the divorce
decree, wherein George is permanently enjoined from harming Myrtle and Kay, and related
allegations in Myrtle's divorce petition, perhaps give logical support for the idea that Myrtle feared
George.

 For the foregoing reasons, we are unable to say as a matter of law that the issue of
Kay's paternal parentage was litigated fully and fairly in the 1960 divorce action. Cf. B.M.L., 919
S.W.2d at 857-58 (physician's unsworn letter attached to party's affidavit sufficient to raise
genuine issue of material fact on whether blood test was falsified in paternity action, precluding
determination that child's interest was fully and fairly litigated, as a matter of law, in earlier
action). We hold accordingly.

 Kay filed in the probate court an opposing motion for summary judgment and
complains on appeal that the court below erred in failing to sustain her motion. She urged as
grounds that the DNA comparison conclusively established Owens's paternity and that res judicata
and collateral estoppel did not bar her action as a matter of law. For the reasons explained above,
we hold the doctrine of collateral estoppel was neither defeated nor established as a matter of law. 
We therefore hold the probate court did not err in overruling Kay's motion for summary judgment.


 We reverse that part of the judgment recovered by appellees and remand that portion
of the cause to the trial court. We affirm the remainder of the judgment.



 

 John E. Powers, Justice

Before Justices Jones, B. A. Smith and Powers*

Affirmed in Part; Reversed and Remanded in Part

Filed: January 13, 2000

Do Not Publish





















* Before John E. Powers, Senior Justice, (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The remaining appellees are Bobbie Arnold and Unknown Heirs, Heirs Suffering Legal
Disability, and Out-of-State Heirs of Murray Maurice Owens.
2. Section 42(b)(1) of the Probate Code declares that for purposes of inheritance "a child
is the child of his biological father if the child . . . is adjudicated to be the child of the father by
court decree as provided by Chapter 160, Family Code"; and, one who claims "to be a biological
child of the decedent . . . may petition the probate court for a determination of right of
inheritance." Tex. Prob. Code Ann. § 42(b)(1) (West 1996).


 Chapter 160 of the Family Code establishes the procedures governing a suit to determine
"parentage," together with a provision that such a suit "is barred if final judgment has been
rendered by a court of competent jurisdiction . . . adjudicating a named individual to be the
biological father of the child." Tex. Fam. Code Ann. § 160.006(a)(1) (West 1996).
3. The judgment we now review rests upon the single ground of collateral estoppel and is
silent as to other grounds, such as a want of standing and a bar of limitations, urged by appellees
as grounds for summary judgment. Appellees do not, however, contend on appeal that the
judgment should be sustained on any such other ground, nor do they brief those grounds. We
therefore do not consider whether the judgment may be upheld on any ground other than collateral
estoppel. See Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 625-26 (Tex. 1996).
4. The appellate record does not show that any objection was made or ruled upon
concerning the hearsay nature of the various statements attributed to Myrtle. See Tex. R. Civ.
P. 166a(f); Tex. R. Evid. 802; B.M.L. v. Cooper, 919 S.W.2d 855, 858 (Tex. App--Austin 1996,
no writ). The "Dead Man Rule" does not preclude such testimony, apparently, because the
statements are attributed to Myrtle, not to Owens, the intestate. See Tex. R. Evid. 601(b).



ld accordingly.

 Kay filed in the probate court an opposing motion for summary judgment and
complains on appeal that the court below erred in failing to sustain her motion. She urged as
grounds that the DNA comparison conclusively established Owens's paternity and that res judicata
and collateral estoppel did not bar her action as a matter of law. For the reasons explained above,
we hold the doctrine of collateral estoppel was neither defeated nor established as a matter of law. 
We therefore hold the probate court did not err in overruling Kay's motion for summary judgment.


 We reverse that part of the judgment recovered by appellees and remand that portion
of the cause to the trial court. We affirm the remainder of the judgment.



 

 John E. Powers, Justice

Before Justices Jones, B. A. Smith and Powers*

Affirmed in Part; Reversed and Remanded in Part

Filed: January 13, 2000

Do Not Publish