97 S.W.3d 818 (2003)
In the Interest of J.W., A Child.
No. 05-01-01938-CV.
Court of Appeals of Texas, Dallas.
January 27, 2003.
*819 Ray Chappelle, Dallas, LaVance Williams, for appellant.
Jimmy L. Verner, Jr., Verner & Brumley, Craig Anthony Bonham, Bonham and Associates, Dallas, for appellee.
Before Justices MOSELEY and LANG.[1]

OPINION
Opinion by Justice LANG.
Appellant LaVance Williams appeals the trial court's order declaring him to be the father of J.W. and imposing child support obligations. J.W. cross-appeals seeking an additional year of retroactive child support. In three issues, Williams argues the trial court erred in its paternity finding because a previous divorce decree had determined another man was J.W.'s father. We affirm the trial court's order.

Factual and Procedural Background
J.W.[2] was born during the marriage of J.W.'s mother, Theodora Gilleylen, and Andrew L. Boone. In 1991, Theodora filed for divorce from Boone. In her petition, she alleged she and Boone were the parents of J.W. Boone did not answer and the divorce was granted by default on October 4, 1991. The divorce decree found *820 that Theodora and Boone were the parents of J.W., appointed Theodora sole managing conservator of J.W., and ordered Boone to pay child support.
On October 16, 1996, Theodora filed a petition for termination of the parent-child relationship between J.W. and Boone, in which she alleged Boone was the biological father of J.W. The alleged grounds for termination were abandonment and failure to pay child support. Shortly after the petition was filed, a paternity test was done on Theodora, J.W., and Williams. According to a sworn paternity report, Theodora and J.W. gave blood samples for DNA paternity testing on November 11, 1996, and Williams gave a blood sample on February 7, 1997. The paternity report dated February 13, 1997 stated that Williams could not be excluded as J.W.'s father, and that the probability of paternity[3] was 99.9962 percent. The trial court appointed an attorney ad litem for J.W. in the termination proceeding. A decree terminating Boone's parental rights was signed on December 2, 1998, again by default. In the decree, the court found that Boone had abandoned J.W., that Boone had failed to pay child support, and that Boone was not the biological father of J.W. based on DNA paternity testing submitted to the court. The court also found there was no child support arrearage. The record does not show this decree was appealed or its findings challenged by any person.
On January 25, 1999, Theodora filed a petition to establish that Williams was the biological father of J.W. (Theodora's Paternity Action). She did not request and the trial court did not appoint a guardian ad litem to represent the interests of J.W. Williams moved to dismiss the suit on the grounds that the divorce decree had adjudicated Boone to be J.W.'s father and the later paternity suit was barred under former section 160.007 of the family code.[4] That section provided, in part:
(a) Except as provided by Subsection (b), a suit under this chapter with respect to a child is barred if final judgment has been rendered by a court of competent jurisdiction:
(1) adjudicating a named individual to be the biological father of the child;
...
TEX. FAM.CODE ANN. § 160.007.[5] Theodora filed the February 13, 1997 paternity test in the paternity suit against Williams. After a hearing, the trial court granted Williams's motion to dismiss the paternity suit on June 11, 1999.
On September 28, 2000, Theodora filed another paternity suit against Williams, this time as next friend of J.W. (J.W.'s Paternity Action). Williams again moved to dismiss on the grounds of res judicata, collateral estoppel, and former section 160.007. An attorney ad litem was appointed for J.W. and J.W., through his attorney ad litem, filed an amended petition *821 to establish paternity. In addition to the paternity allegations, J.W. sought a declaratory judgment that former section 160.007 was unconstitutional under the Texas and federal constitutions and served the Texas Attorney General with a copy of the pleading under Tex. Civ. Prac. & Rem. Code Ann. § 37.006(b) (Vernon 1997).
J.W. filed a motion for partial summary judgment on Williams's affirmative defenses of res judicata, collateral estoppel and plea in bar based on the findings in the prior divorce. Williams filed a motion to dismiss and cross-motion for summary judgment. The trial court granted partial summary judgment for J.W., and denied Williams's motion. The trial court later held a pretrial conference under former section 160.105 and found that genetic testing identified Williams as J.W.'s father. The partial summary judgment became final when the court signed an order determining parentage and awarding child support after a hearing on child support.
Williams filed a notice of appeal from the order granting partial summary judgment and denying his motion for summary judgment. Williams's first issue deals with our jurisdiction and has been resolved by a prior order.[6] In his second issue, Williams argues former section 160.007(a)(1) bars J.W.'s paternity suit and the trial court should have granted summary judgment for Williams and dismissed the suit. In his third issue, Williams argues the termination of Boone's parental rights did not "open the door" for a new paternity suit to determine another man's paternity.
By cross-appeal, J.W. alleges that if former section 160.007 bars his paternity suit, then the statute is unconstitutional. J.W. also complains that the trial court did not award additional retroactive child support.

Standard of Review
We apply the established standards for reviewing a summary judgment. The party moving for summary judgment has the burden of showing no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. See Tex.R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex.1985); Swilley v. Hughes, 488 S.W.2d 64, 67 (Tex. 1972). In deciding whether a disputed material fact issue exists, precluding summary judgment, evidence favorable to the nonmovant will be taken as true. Nixon, 690 S.W.2d at 548-49. Further, every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. Id.
When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. City of Garland v. Dallas Morning News, 22 S.W.3d 351, 356 (Tex.2000). When the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both parties and determine all questions presented. Id. The reviewing court should render the judgment that the trial court should have rendered. Id.

Application of Law to Facts
We discuss Williams's second and third issues together, which essentially claim that the paternity finding in the divorce decree bars this paternity action. J.W. *822 moved for summary judgment on the grounds that former section 160.007 and the divorce decree did not bar a paternity suit brought in his own right through an attorney ad litem. J.W. also challenged the constitutionality of the statute. In response, Williams moved to dismiss and for summary judgment on the grounds that J.W.'s interests were adequately represented by Theodora, and that the divorce decree was an adjudication of paternity barring any later paternity suit. Williams also responded to the constitutional challenges.
The trial court held a hearing on the motions, and signed an order granting J.W.'s motion for partial summary judgment and denying Williams's motion to dismiss and cross-motion for summary judgment without specifying grounds for its decision. The summary judgment evidence included the sworn DNA paternity test report,[7] the divorce decree, the decree terminating Boone's parental rights, and the pleadings in J.W.'s Paternity Action. We also have a record of the argument at the summary judgment hearing. The record also includes the pleadings in Theodora's Paternity Action. We can affirm the trial court's summary judgment if any ground raised in the motion has merit. See Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex.2001) (per curiam). We conclude the summary judgment was correct because J.W.'s interests were not adequately represented in the prior proceedings.
Williams relies on Dreyer v. Greene to support his argument that J.W.'s paternity suit was barred by the prior divorce decree. 871 S.W.2d 697 (Tex.1993). In Dreyer, the supreme court held a default divorce decree finding the husband and wife were the parents of the children of the marriage was an adjudication that the husband was the biological father of the children. Id., at 698. Thus, the court held a later paternity suit brought by the children through their mother as next friend against a man other than the former husband was barred by the predecessor to former section 160.007. Id.
We distinguish Dreyer for several reasons. In Dreyer, the wife swore in the divorce petition that she and her husband were the parents of the children of the marriage. Id., at 697. Later, she obtained an agreed order to pay child support against her former husband, which included a finding that the children were born during the marriage. Id. Here, the divorce petition was not sworn to and the record does not indicate Boone ever paid child support. Nor is there any evidence of a later agreement between Boone and Theodora acknowledging Boone as J.W.'s father. In fact, Theodora sought to terminate Boone's parent-child relationship with J.W. for abandonment and failure to pay child support. Moreover, unlike Dreyer, the trial court later terminated Boone's parental rights and specifically found that Boone was not J.W.'s biological father based on DNA evidence submitted to the court. This finding and the termination order were not challenged by Boone through any appeal. Indeed, the only challenge to the paternity test report made by Williams in this case, J.W.'s Paternity Action, was that because the testing was not ordered by the court, filing of the report was not authorized under chapter 160. He did not challenge the results of the test. Furthermore, test results are admissible if the paternity test was conducted *823 either by a court order or by agreement, regardless of whether the test was done before or after the suit was filed.[8]
We have held that a child is not bound by a judgment in a prior paternity proceeding if the child's interest was not identical to the interest of the party bringing the suit. Stroud v. Stroud, 733 S.W.2d 619, 621 (Tex.App.-Dallas 1987, no writ). In Stroud, we recognized that the child's interest in establishing paternity is different from that of the State or a parent seeking child support: "The child's interests, however, in establishing the parent-child relationship with his father, extend far beyond support, and include the right to a relationship with his father, the avoidance of the social stigma imposed on those burdened by the status of illegitimacy, and the right to inherit." Id. at 621-22. The supreme court has recognized that a prior paternity suit will bar a later suit by the child if the "child's interests were adequately pursued in a previous paternity action." Purcell v. Bellinger, 940 S.W.2d 599, 602 (Tex.1997). Accordingly, we must determine whether J.W.'s interests were adequately pursued prior to J.W.'s Paternity Action which is before us.
The binding effect of prior determinations of paternity has caused much confusion in the courts.[9]See B.M.L. v. Cooper, 919 S.W.2d 855, 859-60 (Tex.App.-Austin 1996, no writ). A former section of the family code provided a rebuttable presumption that in a trial of a paternity suit the "interests of the child will be adequately represented by the party bringing suit to establish parentage of the child." Tex. Fam.Code Ann. § 160.003(b). This presumption does not always resolve the confusion. We agree with the Austin Court of Appeals that the cases in this area,
[S]how a struggle to balance strong, competing societal interests. The Texas cases appear to favor, within reason, children having an opportunity to pursue their own interests in establishing paternity. Though Texas society also benefits by protecting citizens from repetitive and harassing lawsuits, its fiscal, emotional, and informational interests in establishing paternity can outweigh the societal interests in finality of judgments.... This conclusion is more compelling as the science of blood-testing in tandem with DNA-screening becomes more precise and dispositive; the burden on alleged fathers of submitting to a second blood draw is minimal compared to the weighty burdens on children of living *824 without knowing who their fathers are. With these added burdens, children (and their representatives) have greater incentive to pursue the suit brought explicitly for the child. Though the Family Code presumes that a statutorily authorized petitioner in a paternity suit will represent the child's interests, the balance of these burdens mandates that courts be particularly sensitive and responsive to evidence tending to rebut that presumption when considering a summary-judgment motion against the child's later suit.
B.M.L., 919 S.W.2d at 860-61 (citations omitted).
Williams also relies on In the Interest of A.L.J., for the proposition that a termination of parental rights does not "disestablish" a prior adjudication of biological fatherhood. 929 S.W.2d 467, 473 (Tex. App.-Tyler 1996, writ denied). Our decision in this case is not based on a finding that the termination decree "disestablished" the paternity finding. Rather, if we conclude that J.W. is not bound by the finding of parentage in the divorce decree, it would be because his interests were not adequately represented in that proceeding. In A.L.J., the divorce decree was entered by default after the husband failed to appear. Id., at 470. The decree found the husband and wife were the parents of A.L.J. and ordered termination of the parent-child relationship between the husband and A.L.J. Id. The A.L.J. opinion does not explain the reasons the husband's parental rights were terminated. See id. Nor does the opinion indicate genetic testing evidence was presented in the termination portion of the case showing the husband was not the father of A.L.J. See id.
The case before us is distinguishable from A.L.J. Here, the termination decree found, based on DNA evidence, that Boone was not J.W.'s father. In addition, in A.L.J. no guardian ad litem was appointed for the child in the termination portion of the divorce action and thus the court presumed the child's interests were adequately represented by the mother. Id., at 471. Here, the trial court appointed a guardian ad litem in the termination case, thus the presumption did not arise.[10] The trial court also appointed a guardian ad litem in J.W.'s Paternity Action, conducted a summary judgment hearing based on motions raising the issue of the adequacy of the representation of J.W.'s interests, and granted J.W.'s motion that his suit was not barred by the divorce decree.

Conclusion as to Williams's Issues on Appeal
A child is not prevented from filing a petition to establish paternity. The law only "prevents relitigation of paternity when the child's interests were adequately pursued in a previous paternity action that resulted in a final judgment." Purcell, 940 S.W.2d at 602. The statutory presumption of adequate representation may not apply to a divorce proceeding because a divorce case is not normally a "suit to determine parentage of the child." See Tex. Fam. Code Ann. § 160.003(b). Nevertheless, we conclude the presumption, if it applies, was rebutted in this case. The summary judgment record reflects: (1) the DNA test results, (2) the fact that Theodora had *825 alleged in both the divorce petition and the termination petition that Boone was J.W.'s father, (3) Theodora's failure to disclose to the court which granted the divorce the possibility of another man's paternity of J.W., (4) the unchallenged finding in the termination order that Boone was not J.W.'s biological father, and (5) the appointment of a guardian ad litem in the termination case. Thus, J.W.'s interests were not adequately pursued in the prior proceedings and he is not bound by the finding in the divorce decree.[11] The trial court properly granted J.W.'s motion for partial summary judgment and denied Williams's cross-motion.
We overrule Williams's second and third issues.

Conclusion as to J.W.'s Cross-Appeal
J.W. brings a conditional cross-appeal raising his state and federal constitutional challenges to former section 160.007. Because we affirm the trial court's order, we do not reach J.W.'s alternative point regarding the constitutionality of former section 160.007. See Tex.R.App. P. 47.1.
In his second cross-issue, J.W. says that he requested at trial a child support award retroactive to January 1, 1999, and argues the trial court abused its discretion by awarding retroactive child support only to January 1, 2000. We have reviewed the record presented to us as to the order of the trial court establishing Williams's paternity of J.W. and ordering child support. However, there is no record of the evidence presented as to the child support portion of this order. Thus, J.W. has presented nothing for us to review on his cross-appeal regarding his claim for additional retroactive child support. See Tex. R.App. P. 33.1; Am. Paging of Tex., Inc. v. El Paso Paging, Inc., 9 S.W.3d 237, 240 (Tex.App.-El Paso 1999, pet. denied); In re Marriage of Spiegel, 6 S.W.3d 643, 646 (Tex.App.-Amarillo 1999, no pet.). Based on the record before us, the trial court did not abuse its discretion in awarding retroactive child support to January 1, 2000 rather than January 1, 1999. See In re Guthrie, 45 S.W.3d 719, 727 (Tex.App.-Dallas 2001, pet. denied). We overrule J.W.'s cross-issue number two.
The judgment of the trial court is affirmed.
NOTES
[1] The Honorable Ed Kinkeade was a member of the panel when this case was argued and submitted for decision. Due to his retirement on November 18, 2002, Judge Kinkeade did not participate in the issuance of this opinion. See Tex.R.App. P. 41.1(a) & (b).
[2] J.W. was born A.L.B., Jr. His name was changed by court order on August 12, 1999, on a petition by his mother.
[3] Under current law, "`Probability of paternity' means the probability, with respect to the ethnic or racial group to which the alleged father belongs, that the alleged father is the father of the child, compared to a random, unrelated man of the same ethnic or racial group, expressed as a percentage incorporating the paternity index and a prior probability." Tex. Fam.Code Ann. § 160.102(14) (Vernon 2002).
[4] Chapter 160 of the family code was amended effective June 14, 2001. Act of May 25, 2001, 77th Leg., ch. 821, § 3.02, 2001 Tex. Sess. Law Serv. 1516, 1547. Unless otherwise noted, references to chapter 160 herein will be to the family code section in effect at the time this case was decided.
[5] Act of April 6, 1995, 74th Leg., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 209, amended by Act of May 25, 2001, 77th Leg., ch. 821, § 1.01, 2001 Tex. Sess. Law Serv. 1516, 1533.
[6] Williams's first issue is moot because the partial summary judgment became final when the trial court signed its order establishing paternity and setting child support on May 14, 2002. We treated Williams's notice of appeal from the partial summary judgment as prematurely filed and directed him to file an amended notice of appeal correctly reflecting the date of the judgment on appeal. See Tex.R.App. P. 25.1(f), 27.1(a).
[7] Williams did not challenge the use of the sworn test report as summary judgment evidence.
[8] Chapter 160 of the family code expressly authorized paternity test results to be offered and admitted at a pretrial conference "if the tests were conducted under a court order or by agreement without regard to whether the tests were performed before or after the filing of a suit." Tex. Fam.Code Ann. § 160.105(f) (emphasis added).
[9] J.W. argues the difficulty is resolved under the recent amendments to chapter 160 of the family code. Section 160.637 of the current statute, the Uniform Parentage Act, provides in part:

(b) A child is not bound by a determination of parentage under this chapter unless:
(1) the determination was based on an unrescinded acknowledgment of paternity and the acknowledgment is consistent with the results of genetic testing;
(2) the adjudication of parentage was based on a finding consistent with the results of genetic testing and the consistency is declared in the determination or is otherwise shown; or
(3) the child was a party or was represented in the proceeding determining parentage by an attorney ad litem.
TEX. FAM.CODE ANN. § 160.637(b) (Vernon 2002). Thus, it appears that a child is not bound by a finding in a divorce decree that the child is of the marriage unless the child was represented by an attorney ad litem or one of the other exceptions in section 160.637(b) apply.
[10] We note that in the termination suit against Boone, the trial court determined Theodora could not adequately represent the interests of J.W. In her petition for termination, Theodora, once again, alleged that Boone was J.W.'s father. The petition also requested the appointment of a guardian ad litem to represent the interests of J.W. The trial court later appointed a guardian ad litem. The court then found in the termination order that based on DNA paternity testing, Boone was not J.W.'s biological father.
[11] We agree that Theodora was bound by the divorce decree and that her paternity suit against Williams was properly dismissed under TEX.FAM.CODE ANN. § 160.007. J.W., however, was not a party to either the divorce or Theodora's Paternity Action.