NO. 12-03-00004-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS


 


§
 APPEAL FROM THE 



THE STATE OF TEXAS FOR THE 

BEST INTEREST AND PROTECTION
§
 COUNTY COURT AT LAW OF

OF M.R.


§
 CHEROKEE COUNTY, TEXAS






MEMORANDUM OPINION
 

 Appellant M.R. appeals from an order of commitment for extended inpatient mental health

services and an order to administer psychoactive medication. After a hearing without a jury, the trial
court ordered M.R. committed to Rusk State Hospital for a period not to exceed twelve months. On
the same day, the trial court entered an order authorizing the Texas Department of Mental Health and
Mental Retardation to administer psychoactive medication to M.R. while he is committed to Rusk
State Hospital. In seven issues, M.R. asserts the evidence is legally and factually insufficient to
support the order of commitment, the trial court erred in ordering administration of psychoactive
medication, his constitutional rights to due process and equal protection have been violated, and he
was denied effective assistance of counsel. We affirm. 


Background

 On December 9, 2002, an application for court-ordered extended mental health services was
filed requesting the court commit M.R. to Rusk State Hospital for a period not to exceed twelve
months. The application was supported by a certificate of medical examination for mental illness,
prepared by a physician, Dr. Harry Thompson, who had examined M.R. on December 5. Dr.
Thompson diagnosed M.R. as having "Bipolar I Disorder, manic, severe, with psychotic features." 
He found that M.R. is mentally ill and is suffering severe and abnormal mental, emotional or
physical distress; is experiencing substantial mental or physical deterioration of his ability to function
independently, which is exhibited by his inability, except for reasons of indigence, to provide for his
basic needs; and is unable to make a rational and informed decision as to whether or not to submit
to treatment. Dr. Thompson reached these conclusions because M.R. had been hospitalized since
April 23, 2002 with no improvement to his condition. On December 5, M.R. stated that he "thinks
in fifty dimensions" and knew more than Newton when he was born. The doctor described M.R. as
engaging in nonstop loud talk with grandiose content. When the doctor asked M.R. why treatment
has been unsuccessful M.R. held up a copy of the New Testament, but did not reply. Dr. Thompson
also stated that he expects M.R.'s condition to continue for more than ninety days because M.R. has
had poor response to several medications and combinations of medications. He is still manic and
psychotic and requires more time to determine the most efficient medications.

 On December 9, 2002, M.R. was examined by Dr. Larry Hawkins who then also prepared
a certificate of medical examination for mental illness. Dr. Hawkins also diagnosed M.R. with
Bipolar Disorder, manic with psychosis, and indicated that M.R. is mentally ill and likely to cause
serious harm to himself and others. He further determined that he is suffering severe and abnormal
mental, emotional or physical distress, is experiencing substantial mental or physical deterioration
of his ability to function independently, which is exhibited by his inability to provide for his basic
needs, and he is unable to make a rational and informed decision as to whether or not to submit to
treatment. He came to these conclusions because, on December 6, M.R. refused his blood pressure
medication and received emergency medication because he threatened to harm another patient. He
also explained that, as of December 9, M.R. was still delusional and grandiose. M.R. believes he
is a rock and roll star. Additionally, M.R. frequently has verbal altercations with other patients. Dr.
Hawkins stated that he expected M.R.'s condition to continue for more than ninety days because he
has not responded well to his medications and often refuses to take them. 

 Dr. Thompson testified at the hearing, first restating his diagnosis that M.R. is suffering from
Bipolar I Disorder, manic, severe, with psychotic features. He determined that M.R. is mentally ill
and is suffering severe and abnormal mental, emotional, or physical distress, is experiencing
substantial mental or physical deterioration of his ability to function independently, which is
exhibited by his inability to provide for his basic needs, and is unable to make a rational, informed
decision as to whether or not to submit to treatment. He based this determination on his examination
of M.R., review of medical records, and on reasonable medical probabilities. Dr. Thompson
explained that M.R. has been hospitalized since April 23, 2002 with very little improvement. He
stated that M.R. "has had a very stormy course with his psychosis, and he has had almost no relief
of the ongoing degree of delusions and the degree of a manic condition with his bipolar disorder." 
His medications have been ineffective causing him to maintain the same degree of psychotic thought
process and manic behavior. Therefore, M.R. is unable to make decisions about his treatment. 
M.R.'s history of mental illness dates back to his early twenties. The doctor indicated that M.R.'s
behavior has changed from "affective disturbance and psychosis, with grandiosity" to irritability and
hostility. M.R. was fifty-one years old at the time of the hearing.

 Dr. Thompson explained that the symptoms M.R. has displayed throughout his mental illness
history, as well as the symptoms he currently displays, evidence a continuing pattern of behavior
tending to confirm M.R.'s distress and the deterioration of his ability to function. Dr. Thompson
testified that M.R.'s symptoms would inhibit him from obtaining and keeping a job and from
interacting appropriately in a public setting. Further, because his illness included some conflict with
fellow tenants and his landlord, the symptoms would inhibit his ability to live independently. His
present illness also includes impairment of the capacity to perform ordinary daily chores of living,
such as preparing meals, washing clothing and dishes, and cleaning the house. Dr. Thompson
testified that M.R.'s condition is likely to continue for more than ninety days and M.R. had received
court-ordered inpatient mental health services for at least sixty consecutive days within the last
twelve months. Finally, Dr. Thompson stated that Rusk State Hospital is the least restrictive
available option for M.R. at this time.

 On cross-examination, Dr. Thompson explained that M.R. refuses to take his medications. 
Therefore, he endangers himself by placing himself at risk for extreme high blood pressure when he
refuses to take his anti-hypertensive and by letting the manic psychosis persist by refusing to take
anti-psychotics and mood stabilizers. The doctor agreed that, while at the hospital, M.R. has
committed no overt act to harm anyone. He further explained that M.R. can dress himself, take care
of his personal hygiene, and feed himself without assistance. Also, he can initiate conversation and
respond to questions. The doctor explained that M.R. is not eligible for services in a less restrictive
environment because he has had such a difficult time in his management at Rusk State Hospital.

 On re-direct, Dr. Thompson explained that they were not getting the anti-manic result they
were seeking. There were medical complications with the medications, making the mania more
difficult to treat. M.R. tries to refuse his medications, but even when he takes them, they are not very
effective. His history of refusing to take his medications evidences a continuing pattern of behavior
resulting in "the continuation of a worsening of his severe psychotic state."

 M.R. testified in his own behalf. His attorney asked him what his thoughts are on the matter
of his staying at the hospital. Initially, he made no verbal response. Instead, he pointed his hands
to the sky. When asked to explain the significance of that action he responded, "I'm in Christ, and
I'm right, and I feel right when I'm off my medicine, because I'm well, because I've worked my
faith, and it will work for you, too, because I love everybody, including my enemies."

 The trial court entered an order for extended inpatient mental health services after
determining that the evidence supports the allegations that M.R. is mentally ill and that he is
suffering severe and abnormal mental, emotional, or physical distress, is experiencing substantial
mental or physical deterioration of his ability to function independently, which is exhibited by his
inability to provide for his basic needs, and he is unable to make a rational and informed decision
as to whether or not to submit to treatment. The court ordered M.R. committed to Rusk State
Hospital for a period not to exceed twelve months.

 The trial court immediately held the medication hearing. Dr. Thompson testified as to the
need for an order to administer medication. M.R. testified to explain that he did not want to take the
prescribed medications because use of medication is against his religion. The trial court granted the
State's application for an order to administer psychoactive medication. It entered an order
authorizing the State to administer certain medication to M.R. during his extended commitment to
Rusk State Hospital.


Sufficiency of the Evidence 

 In his first issue, M.R. asserts there is no evidence, or in the alternative, factually insufficient
evidence to support the order of commitment. M.R. contends that Dr. Thompson's testimony is no
more than bare psychiatric testimony, unsupported by specific factual circumstances, which cannot
support the commitment. He asserts that he has the ability to function in a group home and therefore
should not be committed to Rusk State Hospital. He argues that his refusal to take his medication
is not an overt act or continuing pattern of behavior and cannot be grounds for involuntary
commitment, especially since his refusal is based on religious reasons. M.R. also asserts that
evidence of his history of mental illness is insufficient to support commitment. Accordingly, he
contends the State failed to show a recent overt act or a continuing pattern of behavior tending to
confirm his distress and the deterioration of his ability to function, or his inability to make a rational
and informed decision as to whether to submit to treatment. Thus, he argues, the State failed to meet
its evidentiary burden under the statute.

 In a legal sufficiency review where the burden of proof is clear and convincing evidence, the
reviewing court must consider all of the evidence in the light most favorable to the finding to
determine whether a reasonable trier of fact could have formed a firm belief or conviction that its
finding was true. In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). The reviewing court must assume
that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do
so. Id. A court should disregard all evidence that a reasonable factfinder could have disbelieved or
found to have been incredible. Id. 

 In addressing a factual sufficiency of the evidence challenge, this court must give due
consideration to evidence that the factfinder could reasonably have found to be clear and convincing. 
In re C.H., 89 S.W.3d 17, 25 (Tex. 2002). We must determine whether the evidence is such that
a factfinder could reasonably form a firm belief or conviction about the truth of the State's
allegations. Id. "If, in light of the entire record, the disputed evidence that a reasonable factfinder
could not have credited in favor of the finding is so significant that a factfinder could not reasonably
have formed a firm belief or conviction, then the evidence is factually insufficient." In re J.F.C.,
96 S.W.3d at 267.

 The trial judge may order a proposed patient to receive court-ordered extended inpatient
mental health services if the judge or jury finds, from clear and convincing evidence, that the
proposed patient is mentally ill and, as a result of the mental illness he is likely to cause serious harm
to himself, is likely to cause serious harm to others, or is (i) suffering severe and abnormal mental,
emotional, or physical distress, (ii) experiencing substantial mental or physical deterioration of his 
ability to function independently, which is exhibited by his inability, except for reasons of indigence,
to provide for his basic needs, including food, clothing, health, or safety, and (iii) unable to make
a rational and informed decision as to whether or not to submit to treatment; the proposed patient's
condition is expected to continue for more than ninety days; and the proposed patient has received
court-ordered inpatient mental health services for at least sixty consecutive days during the preceding
twelve months. Tex. Health & Safety Code Ann. § 574.035(a) (Vernon 2003). To be clear and
convincing under this statute, the evidence must include expert testimony and evidence of a recent
overt act or a continuing pattern of behavior that tends to confirm either the likelihood of serious
harm to the proposed patient or others, or the proposed patient's distress and the deterioration of his
ability to function. Tex. Health & Safety Code Ann. § 574.035(e) (Vernon 2003).

 The State provided expert testimony explaining that M.R. is mentally ill and describing a
recent overt act by M.R. He threatened to harm another patient and became so agitated that he
required emergency medication to calm him. M.R. frequently has verbal altercations with other
patients. He is psychotic, delusional, irritable, and hostile. He frequently engages in nonstop loud
talk with grandiose content. This expert testimony of an overt act, as well as M.R.'s mental state,
tends to confirm that M.R. is suffering severe and abnormal mental, emotional, or physical distress. 
Dr. Thompson specifically testified that M.R.'s symptoms inhibit his ability to perform the ordinary
chores of daily living and his ability to obtain and keep a job. His symptoms also inhibit him from
interacting appropriately in public. Thus, he is experiencing deterioration of his ability to function
independently. Further, M.R. refuses to take some of his medications and, although he has
experienced problems for almost thirty years, he denies his need for medication. This indicates he
is unable to make a rational and informed decision as to whether to submit to treatment. Considering
all the evidence in the light most favorable to the finding, we conclude a reasonable trier of fact
could have formed a firm belief or conviction that this finding was true. See In re J.F.C., 96 S.W.3d
at 266. This evidence satisfies the statutory requirement for clear and convincing evidence in
support of the order for extended inpatient mental health services. See Tex. Health & Safety
Code Ann. § 574.035(a). The evidence is legally sufficient to support the trial court's order. See
In re J.F.C., 96 S.W.3d at 266. 

 In addressing M.R.'s factual sufficiency complaint, we consider the evidence the factfinder
could reasonably have found to be clear and convincing. In re C.H., 89 S.W.3d at 25. The evidence
shows M.R. can dress himself, feed himself, and take care of his personal hygiene without assistance. 
He is able to initiate conversation and respond to questions. However, this cannot negate the
evidence that he is not able to perform his own housekeeping chores, be successfully employed, or
interact appropriately outside the hospital. Further, his responses to counsel's questions indicate that
he is not entirely rational. In light of the entire record, we cannot say that the trial court could not
reasonably form a firm belief or conviction that M.R. is distressed and that his ability to function has
deteriorated, thereby requiring further inpatient mental health services. See id. Thus, the evidence
is factually sufficient to support the trial court's findings. We overrule M.R.'s first issue.


Constitutional Claims

 In his third and fourth issues, M.R. contends the trial court erred in rendering judgment in
violation of state and federal guarantees of due process. He asserts that certain terms found in
section 574.035 of the Health and Safety Code are overly broad, vague, and ambiguous so the statute
is susceptible to an arbitrary and unreasonable interpretation, making it violative of the due process
clause of each constitution. In his fifth and sixth issues, he asserts that application of section
574.035 results in a violation of his right to equal protection under both the state and federal
constitutions.

 M.R. did not complain to the trial court that his state and federal constitutional rights to due
process and equal protection were being violated. A constitutional claim must have been asserted
in the trial court to be raised on appeal. Dreyer v. Greene, 871 S.W.2d 697, 698 (Tex. 1993). 
Therefore, M.R. has not preserved these complaints for review. We overrule M.R.'s issues three,
four, five, and six.


Ineffective Assistance of Counsel

 In his seventh issue, M.R. contends he was denied effective assistance of counsel because
trial counsel failed to object to the constitutionality of the applicable statutes. He argues that this
resulted in his being subjected to unconstitutional statutes at trial and the loss of relief due to waiver
on appeal. 

 The United States Supreme Court has established a two-part test, also adopted by Texas
courts, to determine whether the representation of counsel was effective. The defendant must show
that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is
a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings
would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064,
80 L. Ed. 2d 674 (1984). Counsel is presumed to have rendered adequate assistance and made all
significant decisions in the exercise of reasonable professional judgment. Strickland, 466 U.S. at
689, 104 S. Ct. at 2065. The appellant has the burden of proving ineffective assistance of counsel
claims by a preponderance of the evidence. Jackson v. State, 973 S.W.2d 954, 956 (Tex. Crim.
App. 1998). Claims of ineffective assistance of counsel must be supported by the record. See
Mercado v. State, 615 S.W.2d 225, 228 (Tex. Crim. App. [Panel Op.] 1981). When the record
contains no evidence of the reasoning behind counsel's conduct, we cannot conclude counsel's
performance was deficient. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

 The record is silent as to counsel's trial strategy. We have no evidence from counsel's
perspective concerning whether he considered challenging the constitutionality of section 574.035
and, if so, the reasons he decided not to. Therefore, we are unable to determine that the failure to
raise those issues in the trial court constitutes ineffective assistance of counsel. Jackson, 877
S.W.2d at 771. M.R. has failed to show that his counsel's performance fell below the objective
standard of reasonableness. Further, even if we agreed that trial counsel's performance was
deficient, M.R. has failed to make any showing that he was prejudiced as a result. M.R. alludes to
the fact that, had counsel made the objections, the trial court might have agreed with him. However,
he presents no authority from which we can determine that counsel's constitutional challenges, if
raised, would have been sustained by the trial court. M.R. has failed to show that there is a
reasonable probability that the result of the proceeding would have been different but for the alleged
error made by counsel. Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. M.R. has failed to meet his
burden of proving ineffective assistance of counsel. Jackson, 973 S.W.2d at 956. Accordingly, we
overrule M.R.'s seventh issue.


Psychoactive Medication

 In his second issue, M.R. asserts the trial court erred in entering an order authorizing
administration of psychoactive medication. He argues that such an order must be based on a valid
order for inpatient mental health care and, due to the reasons asserted in his other issues, the trial
court's order for inpatient mental health care is not valid. M.R. also asserts that the trial court erred
in ordering the administration of psychoactive medication because, in spite of a statutory requirement
to do so, the trial court considered neither alternatives to psychoactive medication, nor M.R.'s
preferences regarding treatment with psychoactive medication. 

 The court may enter an order authorizing the administration of psychoactive medication if
it finds by clear and convincing evidence that the patient is under an order for temporary or extended
mental health services, the patient lacks the capacity to make a decision regarding the administration
of the proposed medication, and treatment with the proposed medication is in the best interest of the
patient. Tex. Health & Safety Code Ann. § 574.106(a) (Vernon 2003). In determining that there
is a need for psychoactive medication, the court is required to consider the following:


 (1) the patient's expressed preferences regarding treatment with psychoactive medication;


 (2) the patient's religious beliefs;


 (3) the risks and benefits, from the perspective of the patient, of taking psychoactive medication;


 (4) the consequences to the patient if the psychoactive medication is not administered;


 (5) the prognosis for the patient if the patient is treated with psychoactive medication; and


 (6) alternatives to treatment with psychoactive medication.


Tex. Health & Safety Code Ann. § 574.106(b) (Vernon 2003).

 Dr. Thompson testified at the hearing on the State's application for court-ordered
administration of psychoactive medication. He stated that M.R. refuses to take his medication
voluntarily and, in his opinion, M.R. lacks the capacity to make a decision regarding the
administration of such medication. Dr. Thompson stated that M.R.'s psychosis impairs his decision-making ability. The doctor testified that treatment with the medications indicated on the application
is the proper course of treatment for M.R. and in his best interest. He said M.R. would benefit from
their use and the benefits outweigh the risks. Dr. Thompson also testified that M.R.'s stay in the
hospital would likely be shortened with the use of these medications. On cross-examination, Dr.
Thompson acknowledged that M.R. said he did not want the medications. Initially, M.R. insisted
nothing was wrong with him and therefore he did not need medications. Then he insisted that his
treatment should involve ancient Chinese medicine. Then, two weeks before the hearing, he began
claiming religious-based reasons for refusing the medicine. Dr. Thompson explained that, in his
opinion, M.R. did not evoke his right of refusal as a religious belief, but rather as a psychotic
delusional concept regarding the idea of religion. He also repeated his earlier testimony that use of
the prescribed medicines would improve M.R.'s condition and allow him to leave the hospital
earlier. The doctor testified that there are no alternatives to the use of psychoactive medications that
could render the same or similar results.

 M.R. testified that use of the prescribed medications is against his religion. He explained that
he does not need the medication because he has faith, a higher power than medicine. He also said
that he is well, he feels right when off his medicine, and he does not need the medicine. He believes
that any illness can be cured by faith in God and the use of the medications would interfere with his
relationship with God.

 Having disagreed with all of M.R.'s assertions in his other six issues, we have determined
that the trial court's order for extended mental commitment is valid. Therefore, we reject M.R.'s
argument that the order authorizing administration of psychoactive medication is invalid on that
basis. See Tex. Health & Safety Code Ann. § 574.106(a). 

 Dr. Thompson's testimony encompassed the factors in Section 574.106. M.R. did express
his preference to be free of medications; however, the trial court is not required to defer to his
preference on the subject. We conclude that the trial court met the obligations imposed on it by
Section 574.106. We overrule M.R.'s second issue.


Conclusion

 The evidence is legally and factually sufficient to support the trial court's order of
commitment for extended inpatient mental health services. M.R.'s constitutional complaints have
not been preserved and his trial counsel was not ineffective. Further, the trial court did not err in
ordering administration of psychoactive medication.

 We affirm the trial court's orders of commitment for extended inpatient mental health
services and for administration of psychoactive medication.


 DIANE DEVASTO 

 Justice



Opinion delivered August 29, 2003.

Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.








 


























(PUBLISH)