NO. 12-03-00060-CV



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


THE STATE OF TEXAS
§
 APPEAL FROM THE 


FOR THE BEST INTEREST
§
 COUNTY COURT AT LAW


AND PROTECTION OF J.G.
§
 CHEROKEE COUNTY, TEXAS

 

MEMORANDUM OPINION


 Appellant J.G. appeals from an order of commitment for temporary inpatient mental health
services. After a hearing without a jury, the trial court ordered J.G. committed to Rusk State Hospital
for a period not to exceed ninety days. In five issues, J.G. asserts the evidence is legally and factually
insufficient to support the order and his constitutional rights to due process and equal protection have
been violated. We affirm.


Background 

 On January 28, 2003, an application for court-ordered temporary mental health services was
filed requesting the court commit J.G. to Rusk State Hospital for a period not to exceed ninety days. 
The application was supported by a certificate of medical examination for mental illness, prepared by
a physician, Dr. Harry Thompson, who had examined J.G. on January 23. Dr. Thompson diagnosed
J.G. as suffering from Bipolar I disorder, manic episode. The doctor indicated that J.G. is mentally ill
and is suffering severe and abnormal mental, emotional or physical distress, is experiencing substantial
mental or physical deterioration of his ability to function independently, and is unable to make a rational
and informed decision as to whether to submit to treatment. He based this opinion on J.G.'s references
to himself using many identifications of professions and wealth. He becomes agitated and frustrated
due to his delusions. He showed a pattern of aggression and of obsessive manipulation. 

 On January 29, 2003, J.G. was examined by Dr. Larry Hawkins who then also prepared a
certificate of medical examination for mental illness. Dr. Hawkins diagnosed J.G. as suffering from
schizoaffective disorder. He found that J.G. is mentally ill and is likely to cause serious harm to others. 
He also found that J.G. is suffering severe and abnormal mental, emotional, or physical distress, is
experiencing substantial mental or physical deterioration of his ability to function independently, and
is unable to make a rational and informed decision as to whether to submit to treatment. On January
29, 2003, J.G. answered that he had the head of a beast in him when Dr. Hawkins asked whether he had
special powers. Dr. Hawkins determined that J.G. is delusional. On January 24, J.G. was placed in
personal restraint for trying to hit a staff member in the face. On January 4, he was given emergency
medications for threatening violent behavior.

 Dr. Harry Thompson testified at the hearing. He examined J.G. on January 23. He stated that
J.G. suffers from Bipolar I disorder, manic episode. Dr. Thompson stated that J.G. is suffering severe
and abnormal mental, emotional or physical distress, is experiencing substantial mental or physical
deterioration of his ability to function independently, and is unable to make a rational and informed
decision as to whether or not to submit to treatment. 

 Dr. Thompson explained that through his interaction with J.G. and reports by the nursing staff,
he saw J.G.'s thought processes and behavior. Symptoms J.G. has displayed include manic
hyperactivity and delusions, some of which are entrenched, prolonged, and repeated, and some of which
are relatively new. His symptoms include insomnia, manic agitation, expression of delusions, loose
association, scattered thoughts, and hyper-talkativeness. J.G. has a history of mental illness. 
Throughout his history he has been delusional, including grandiosity of academic degrees and extreme
wealth, and he has exhibited erratic behavior, poor judgment, and poor impulse control. He also has
a history of poly-substance abuse such as inhalants and stimulants. Considering his mental history, his
behavior, and his symptoms, J.G. exhibits a continuing pattern of behavior that tends to confirm J.G.'s
distress and the deterioration of his ability to function independently. The "irritable way" in which J.G.
approaches people, with his hyper-talkativeness and agitation, would inhibit J.G.'s ability to interact
appropriately in a public setting. J.G. expresses his delusions, which impairs his ability to interact, his
ability to obtain and keep a job, and his ability to perform chores of daily living. The doctor's opinion
is based on personal examination of J.G., a review of the medical records and history, and on reasonable
medical probability. Dr. Thompson stated that Rusk State Hospital is the least restrictive option
available for J.G. at this time.

 On cross-examination, Dr. Thompson explained that J.G. has suffered injuries as a result of
aggression, but he has not purposely hurt himself. He has committed overt acts, striking people, to
purposely hurt others. The doctor does not believe J.G. can survive in freedom, even with the help of
family members or friends. He can dress and feed himself without assistance and take care of his
personal hygiene without assistance. He can initiate conversation and respond to conversation. He
would be able to order food at a restaurant and make and take change in payment of his restaurant bill. 
The doctor does not believe J.G. can hold down a minimum-wage job. He has made little progress
while at the hospital. J.G. signed a consent to take medication. Dr. Thompson explained that J.G. has
the capacity to sign his consent and agrees to take specific medications. However, his ability to accept,
understand, and cooperate with all parameters of his treatment is impaired. After the State rested, the
trial court stated on the record that, during the doctor's testimony, J.G. interrupted the testimony on nine
separate occasions and claimed to be a doctor himself. 

 J.G. took the witness stand in his own behalf. He said he does not want to stay in the hospital,
but he will if he has to. When asked where he would go, he explained that he has an address where he
stays with his fiancee. He said his bills are paid, he seeks God's kingdom, and he has a lawnmower. 
He said he does not wish to hurt himself or anyone else. He explained that he has an income of $572.00
a month and he is incorporated.

 The trial court found that J.G. is mentally ill and is suffering severe and abnormal mental,
emotional, or physical distress; experiencing substantial mental or physical deterioration of his ability
to function independently; and unable to make a rational and informed decision as to whether or not to
submit to treatment. The trial court entered an order reflecting these findings and ordering J.G.
committed to Rusk State Hospital for inpatient care for a period not to exceed ninety days.


Sufficiency of the Evidence

 In his first issue, J.G. asserts the evidence is neither legally nor factually sufficient to support
the order of commitment. He complains that Dr. Thompson's testimony provides a list of symptoms
but does not provide the necessary factual bases upon which his opinion is grounded. He contends that
evidence of specific behavior showing that J.G. is mentally ill does not show an overt act or continuing
pattern of behavior tending to confirm that he is suffering severe and abnormal distress, experiencing
deterioration of his ability to function independently, or unable to make a rational and informed decision
as to whether to submit to treatment. Thus, he argues, the State failed to meet its evidentiary burden
under the statute. 

 In a legal sufficiency review where the burden of proof is clear and convincing evidence, the
reviewing court must consider all of the evidence in the light most favorable to the finding to determine
whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. 
In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). The reviewing court must assume that the factfinder
resolved disputed facts in favor of its finding if a reasonable factfinder could do so. Id. A court should
disregard all evidence that a reasonable factfinder could have disbelieved or found to have been
incredible. Id. 

 In addressing a factual sufficiency of the evidence challenge, this court must give due
consideration to evidence that the factfinder could reasonably have found to be clear and convincing. 
In re C.H., 89 S.W.3d 17, 25 (Tex. 2002). We must determine whether the evidence is such that a
factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. 
Id. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have
credited in favor of the finding is so significant that a factfinder could not reasonably have formed a
firm belief or conviction, then the evidence is factually insufficient." In re J.F.C., 96 S.W.3d at 267.

 The trial judge may order a proposed patient to receive court-ordered temporary inpatient mental
health services if the judge or jury finds, from clear and convincing evidence, that the proposed patient
is mentally ill and, as a result of the mental illness he is likely to cause serious harm to himself, is likely
to cause serious harm to others, or is (i) suffering severe and abnormal mental, emotional, or physical
distress, (ii) experiencing substantial mental or physical deterioration of his ability to function
independently, which is exhibited by his inability, except for reasons of indigence, to provide for his
basic needs, including food, clothing, health, or safety, and (iii) unable to make a rational and informed
decision as to whether or not to submit to treatment. Tex. Health & Safety Code Ann. § 574.034(a)
(Vernon 2003). To be clear and convincing under this statute, the evidence must include expert
testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that
tends to confirm either the likelihood of serious harm to the proposed patient or others, or the proposed
patient's distress and the deterioration of his ability to function. Tex. Health & Safety Code Ann.
§ 574.034(d) (Vernon 2003). 

 The State provided expert testimony explaining that J.G. is mentally ill and describing his
behavior and some specific acts. J.G. hit a staff member in the face and, on another occasion, had to
be medicated due to threatening violent behavior. According to Dr. Thompson's certificate of medical
examination for mental illness, J.G. is delusional, agitated, frustrated, and aggressive. Dr. Hawkins
noted on his certificate that J.G. is delusional and violent. Dr. Thompson explained from the stand that
J.G. exhibits the symptoms of manic agitation, hyper-talkativeness, delusions, scattered thought, and
loose association. Further, he shows poor judgment, poor impulse control, and erratic behavior. He
has a history of poly-substance abuse and is unable to interact appropriately in public. In Dr.
Thompson's opinion, J.G. would be unable to survive outside the hospital. This is expert testimony of
violent overt acts and a pattern of behavior exhibiting many symptoms which collectively tend to
confirm J.G.'s distress and the deterioration of his ability to function outside the hospital.

 Considering all the evidence in the light most favorable to the findings, we conclude a
reasonable trier of fact could have formed a firm belief or conviction that these findings were true. See
In re J.F.C., 96 S.W.3d at 266. This evidence satisfies the statutory requirement for clear and
convincing evidence in support of the order for temporary inpatient mental health services. See Tex.
Health & Safety Code Ann. § 574.034(d). The evidence is legally sufficient to support the trial
court's order. See In re J.F.C., 96 S.W.3d at 266.

 In addressing J.G.'s factual sufficiency complaint, we consider the evidence the factfinder could
reasonably have found to be clear and convincing. In re C.H., 89 S.W.3d at 25. There is some
evidence that J.G. receives monthly checks as an income and that he has a place to live. The evidence
shows J.G. can dress himself, feed himself, and take care of his personal hygiene without assistance. 
He can initiate conversation and respond to conversation. However, the doctor testified that J.G. does
not understand or cooperate with all parameters of his treatment, cannot interact appropriately in public,
and is not fully able to perform the chores of daily living. In light of the entire record, the evidence that
the trial court could not have credited in favor of its findings is not so significant that it could not
reasonably form a firm belief or conviction that J.G. is distressed and that his ability to function has
deteriorated, thereby requiring inpatient mental health services. See id. Thus, the evidence is factually
sufficient to support the trial court's findings. Because we hold the evidence is both legally and
factually sufficient to support the trial court's order, we overrule J.G.'s first issue.


Constitutional Claims

 In his second and third issues, J.G. contends the trial court erred in rendering judgment in
violation of state and federal guarantees of due process. He asserts that certain terms found in section
574.034 of the Health and Safety Code are overly broad, vague, and ambiguous so the statute is
susceptible to a variety of interpretations, making it violative of the due process clause of each
constitution. In his fourth and fifth issues, he asserts that application of section 574.034 results in a
violation of his right to equal protection under both the state and federal constitutions.

 J.G. did not complain to the trial court that his state and federal constitutional rights to due
process and equal protection were being violated. A constitutional claim must have been asserted in
the trial court to be raised on appeal. Dreyer v. Greene, 871 S.W.2d 697, 698 (Tex. 1993). Therefore,
J.G. has not preserved these complaints for review. We overrule J.G.'s issues two, three, four, and five.


Conclusion

 The evidence is legally and factually sufficient to support the trial court's order of commitment
for temporary inpatient mental health services. J.G.'s constitutional complaints have not been preserved.

 We affirm the trial court's order of commitment for temporary inpatient mental health services.



 SAM GRIFFITH 

 Justice



Opinion delivered October 29, 2003.

Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.









(PUBLISH)