NO. 12-04-00303-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
THE STATE OF TEXAS FOR                          §                 APPEAL FROM THE 
 
THE BEST INTEREST AND                           §                 COUNTY COURT AT LAW
 
PROTECTION OF S.S.                                     §                 CHEROKEE COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Appellant S.S. appeals from an order authorizing the Texas Department of Mental Health and
Mental Retardation (“MHMR”) to administer psychoactive medications. Appellant’s counsel filed
a brief in compliance with Anders v. California, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493
(1967). S.S. also filed a response pro se. We affirm.
 
Background
            On September 15, 2004, the State filed an application for an order to administer psychoactive
medication, which was signed by Dr. Sethurama Srinivasan. In the application, Srinivasan stated
that S.S. was subject to an order dated September 10 for temporary inpatient mental health services
under Section 574.034 of the Texas Health and Safety Code. Srinivasan stated that S.S. had been
diagnosed with bipolar I disorder and requested the trial court to compel S.S. to take four
psychoactive medications: an antidepressant, an anxoilytic/sedative/hypnotic, an antipsychotic, and
a mood stabilizer. Srinivasan stated that S.S. refused to take the medications voluntarily and that
he believed S.S. lacked the capacity to make a decision regarding administration of psychoactive
medications because he is psychotic. Srinivasan determined that these medications are the proper
course of treatment for S.S. and that, if he were treated with the medications, his prognosis would
be fair. However, Srinivasan believed that, if S.S. is not administered the medications, his mental
health will deteriorate. Srinivasan considered other medical alternatives to psychoactive medication,
but determined that those alternatives would not be as effective. Moreover, Srinivasan believed that
the benefits of the psychoactive medications outweighed the risks in relation to present medical
treatment and S.S.’s best interest. 
            On September 17, the trial court held a hearing on the application. Dr. Charles Plyler
testified that he was S.S.’s treating physician and had reviewed the State’s application. He also
stated that he agreed with the contents of that application. Plyler understood that S.S. is currently
under an order dated September 10 for court-ordered inpatient treatment and believed that S.S. lacks
the capacity to make a decision regarding administration of psychoactive medications. Further,
Plyler stated that the application for court-ordered medications was prepared because S.S. is mentally
ill and suffers from bipolar disorder. According to Plyler, the four classes of medications listed in
the application’s exhibit are the proper course of treatment for S.S. If Plyler were allowed to use
these medications, S.S. would likely benefit and the benefits of using these medications outweigh
the risks. Finally, Plyler stated that, if he was allowed to use these medications, S.S.’s hospital stay
would likely be shortened. On cross-examination, Plyler stated that these medications would work
to alleviate S.S.’s symptoms of manic excitability, grandiosity, and reality testing. According to
Plyler, he had not talked with S.S. at any length about these medications because S.S. was not
interested in taking them. Plyler stated that there is no less invasive means of treating S.S. that
would yield the same results. Plyler believed that, if S.S. responds to the medications, he would need
to stay at the hospital a minimum of a couple of weeks. However, if S.S. does not take these
medications, Plyler could not predict how long S.S. would have to stay in the hospital and that it was
very unlikely that his condition would improve.
            S.S. testified that the length of his stay in the hospital pertained to his insurance and that he
would be happy for his insurance to cover any amount. S.S. did not believe that bipolar disorder
could be proven, unlike hyperactivity. In fact, S.S. stated that he did not want a stimulant or an
A.I.D.S. inhibitor because he did not have A.I.D.S. According to S.S., he had people willing to help
him, ladies who agreed to a “plutonic[sic], celibate union,” and that he would be “happy to support
them with the work that they are willing to provide.” S.S. stated that he came to court a little edgy
because he did not want drugs and that he drank a little alcohol. At that time, S.S. began a discourse
on numerous topics stating (1) that he would like to see priests get married again, (2) that his
freedom of religion dictated that “the truth shall set [him] free,” (3) that he endorsed changes in the
protocol of psychology in this state to get people off checks, not on medication, (4) that he had
Cherokee blood, but that he was white, not racist, and (5) that he was going to vote for George W.
Bush, but he would forgive you if you were a Democrat. 
               S.S. testified that he needed more time because he could prove his competency to practice
law in the State of Texas with the Texas Health and Safety Code. He stated that he wanted to
express the protocol of “getting them off the checks, getting them off the drugs.” He testified that
he was not on the street and that “[n]obody said anything [he’s] doing against anybody.” Further,
S.S. claimed that he did not get a chance to consult with his attorney nor had he been given a chance
to read the exhibit to the application. S.S. testified that these medications were not in his best
interest, that he never “had violence” or a violent history, and that he did not have bipolar disorder.
According to S.S., he has read the DSM-IV and that Freud’s philosophy was that everyone must have
a problem because he, Freud, had a problem with cocaine. However, S.S. stated that he has never
“done cocaine.” S.S. quoted scripture and testified that he had purity. S.S. began another discourse
stating that his wife was pregnant, but not by him although he would accept responsibility, that both
he and his wife were twenty-one on the day of the hearing, and that he was ready to shed blood for
his country in Iraq. 
            At the close of evidence, the trial court granted the application. On September 17, after
considering all the evidence, including the application and the expert testimony, the trial court found
that the allegations in the application are true and correct and supported by clear and convincing
evidence. Further, the trial court found that treatment with the proposed medication is in the best
interest of S.S. and that S.S. lacks the capacity to make a decision regarding administration of the
medication. The trial court authorized MHMR to administer to S.S. psychoactive medications,
including antidepressants, antipsychotics, mood stabilizers, and anxiolytics/sedatives/hypnotics. 
This appeal followed.
            Appellant’s counsel has filed what purports to be an Anders brief stating that the appeal is
wholly frivolous and without merit. Counsel’s brief contains a professional evaluation of the record
demonstrating why, under the controlling authorities, there is no error in the court’s judgment. See
High v. State, 573 S.W.2d 807, 812 (Tex. Crim. App. 1978). Counsel served a copy of his brief on
S.S. who filed a pro se response. However, we are hesitant to presume that an Anders analysis is
appropriate for reviewing a trial court’s order authorizing the administration of psychoactive
medications, so we will review the case on its merits before considering counsel’s motion to
withdraw.
 
Sufficiency of the Evidence
            Although counsel for S.S. could not find any issues of merit for an appeal, he did include a
discussion of the controlling authorities regarding a sufficiency challenge to the trial court’s order.
Standard of Review
            In a legal sufficiency review where the burden of proof is clear and convincing evidence, we
must look at all the evidence in the light most favorable to the finding to determine whether a
reasonable trier of fact could have formed a firm belief or conviction that its findings were true. In
re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed
facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a
reasonable fact finder could have disbelieved or found incredible. Id. This does not mean that we
are required to ignore all evidence not supporting the finding because that might bias a clear and
convincing analysis. Id. 
            The appropriate standard for reviewing a factual sufficiency challenge is whether the
evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth
of the petitioner’s allegations. In re C.H., 89 S.W.3d 17, 25 (Tex. 2002). In determining whether
the fact finder has met this standard, we consider all the evidence in the record, both that in support
of and contrary to the trial court’s findings. Id. at 27-29. Further, we must consider whether
disputed evidence is such that a reasonable fact finder could not have reconciled that disputed
evidence in favor of its finding. In re J.F.C., 96 S.W.3d at 266. If the disputed evidence is so
significant that a fact finder could not reasonably have formed a firm belief or conviction, then the
evidence is factually insufficient. Id. 
Order to Administer Psychoactive Medication
            A trial court may issue an order authorizing the administration of one or more classes of
psychoactive medications only if the trial court finds by clear and convincing evidence after the
hearing that (1) the patient is under an order for temporary or extended mental health services, (2)
the patient lacks the capacity to make a decision regarding the administration of the proposed
medication, and (3) treatment with the proposed medication is in the best interest of the patient. 
Tex. Health & Safety Code Ann. § 574.106(a) (Vernon 2003). “Capacity” means a patient’s
ability to (1) understand the nature and consequence of a proposed treatment, including the benefits,
risks, and alternatives to the proposed treatment, and (2) make a decision whether to undergo the
proposed treatment. Tex. Health & Safety Code Ann. § 574.101(1) (Vernon 2003). In making
its findings, the trial court shall consider (1) the patient’s expressed preferences regarding treatment
with psychoactive medication, (2) the patient’s religious beliefs, (3) the risks and benefits, from the
perspective of the patient, of taking psychoactive medication, (4) the consequences to the patient if
the psychoactive medication is not administered, (5) the prognosis for the patient if the patient is
treated with psychoactive medication, and (6) alternatives to treatment with psychoactive medication. 
Tex. Health & Safety Code Ann. § 574.106(b) (Vernon 2003). 
Analysis
            In the application, Srinivasan stated that S.S. was subject to an order for temporary mental
health services, that he believed S.S. lacked the capacity to make a decision regarding administration
of psychoactive medications because he is psychotic, and that these medications are in his best
interest. Further, Srinivasan determined that, if S.S. were not administered these medications, his
mental health would deteriorate. Although Srinivasan considered other medical alternatives to
psychoactive medication, he concluded these alternatives would not be as effective and further
determined that the benefits of these medications outweighed the risks. At the hearing, Plyler
testified that S.S. was subject to an order for temporary mental health services, that he believed S.S.
lacked the capacity to make a decision regarding administration of psychoactive medications, and
that S.S. was mentally ill and suffered from bipolar disorder. Plyler testified that S.S. would benefit
from use of these medications, likely resulting in a shorter hospital stay, and that these benefits
outweighed the risks. According to Plyler, if S.S. did not take these medications, it was very
unlikely that his condition would improve. Further, Plyler testified that there was no less invasive
means of treating S.S. that would yield the same results. Considering all the evidence in the light
most favorable to the findings, we conclude a reasonable trier of fact could have formed a firm belief
or conviction that S.S. lacked the capacity to make a decision regarding administration of the
proposed medications, and that treatment with the proposed medications was in his best interest. See
Tex. Health & Safety Code Ann. § 574.106(a); In re J.F.C., 96 S.W.3d at 266. Therefore, the
evidence is legally sufficient to support the trial court’s order. See In re J.F.C., 96 S.W.3d at 266. 
            Having determined that the evidence is legally sufficient to support the finding, we address
factual sufficiency and consider all of the evidence, both that in support of and contrary to the trial
court’s findings. See In re C.H., 89 S.W.3d at 25. According to Plyler, S.S. was not interested in
taking these medications. S.S. testified that he did not want a stimulant or an A.I.D.S. inhibitor.
According to S.S., these medications were not in his best interest, he was not violent nor did he have
a violent history, and he did not have bipolar disorder. The trial court was entitled to disbelieve S.S.
and disregard the evidence contrary to the State’s position. See id. Based upon our review of the
record as a whole, we conclude that, although there is some disputed evidence, this evidence is not
so significant that a reasonable trier of fact could not have reconciled this evidence in favor of its
finding and formed a firm belief or conviction that S.S. lacked the capacity to make a decision
regarding administration of the proposed medications, and that treatment with the proposed
medications was in his best interest. See Tex. Health & Safety Code Ann. § 574.106(a), (b); In
re C.H., 89 S.W.3d at 25. Therefore, the evidence is factually sufficient to support the trial court’s
order. See In re C.H., 89 S.W.3d at 25. Accordingly, we conclude that the trial court met the
obligations imposed by Section 574.106 of the Texas Health & Safety Code and overrule S.S.’s first
issue.
 
Constitutional Claim
            In his pro se response, S.S. contends that the trial court erred in ordering psychoactive
medications forcibly administered to him in violation of his freedom of religion protected by the
First Amendment to the United States Constitution. More specifically, S.S. argues that part of his
religion is Christian Science in which the strictest adherents, including himself, subscribe to no 
treatment other than the Christian Science treatment nor do they take any medications. He also
asserts that the trial court’s order violates his constitutional right to privacy. However, S.S. did not
properly raise either issue in the trial court. See Tex. R. App. P. 33.1(a). A constitutional claim must
have been asserted in the trial court to be raised on appeal. Dreyer v. Greene, 871 S.W.2d 697, 698
(Tex. 1993). Therefore, S.S. has not preserved this complaint for review. Accordingly, we overrule
S.S.’s constitutional issues.
 
Disposition
            The judgment of the trial court is affirmed. Because we decided the appeal on its merits
rather than considering counsel’s Anders brief, we overrule counsel’s motion to withdraw.
 
 
                                                                                                    SAM GRIFFITH 
                                                                                                               Justice
 
 

Opinion delivered May 18, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.















(PUBLISH)