# NO. 12-12-00220-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS FOR* | *§* | *APPEAL FROM THE* |
| *THE BEST INTEREST AND* | *§* | *COUNTY COURT AT LAW* |
| *PROTECTION OF D.D.* | *§* | *CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

D.D. appeals from an order of commitment for temporary inpatient mental health services. After a hearing without a jury, the trial court ordered D.D. committed to Rusk State hospital for a period not to exceed ninety days. On the same day, the trial court rendered an order authorizing the Texas Department of Mental Health and Mental Retardation[1] to administer psychoactive medication to D.D. while she is committed to Rusk State Hospital. In five issues, D.D. asserts the evidence is legally and factually insufficient to support the order of commitment, and the trial court violated her constitutional rights to due process and equal protection. We affirm.

## BACKGROUND

On June 6, 2012, an application for court-ordered temporary mental health services was filed requesting the court commit D.D. to Rusk State Hospital for a period not to exceed ninety days. The application was supported by two certificates of medical examination for mental illness. The first was prepared by a physician, Dr. Jon Guidry, who had examined D.D. on June 4. Dr. Guidry diagnosed D.D. with "psychosis nos." He found that D.D. is mentally ill, likely to cause serious harm to herself, suffering severe and abnormal mental, emotional or physical distress, experiencing substantial mental or physical deterioration of her ability to function independently, which is

---

[1] The Texas Department of Mental Health and Retardation has been abolished and mental health and state hospital operations were transferred to the Texas Department of State Health Services. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 198, §§ 1.19, 1.26, 2003 Tex. Gen. Laws 611, 636, 641.

exhibited by her inability, except for reasons of indigence, to provide for her basic needs, and unable to make a rational and informed decision as to whether to submit to treatment. D.D. refused to talk to Dr. Guidry. She had been picked up by the police, who she alleged had beaten her. The record reviewed by Dr. Guidry contained allegations that she had jumped in front of a car to harm herself.

The second certificate was completed by Dr. Robert Bouchat, who examined D.D. on June 5. He diagnosed her as being bipolar, but she refused treatment. Dr. Bouchat determined that D.D. is mentally ill, is likely to cause serious harm to herself, and is suffering severe and abnormal mental, emotional or physical distress, is experiencing substantial mental or physical deterioration of her ability to function independently, which is exhibited by her inability, except for reasons of indigence, to provide for her basic needs, and is unable to make a rational and informed decision as to whether or not to submit to treatment. The basis for his opinion was D.D.'s admission that she was walking about at 5:30 a.m. in the vicinity of traffic. Also, she was hyperkinetic, had disorganized thinking, and exhibited bizarre gestures. Further, on June 3, she had intentionally jumped into traffic in a suicide attempt. D.D. also had been labile, irritable, and depressed.

Dr. Bouchat testified at the hearing, repeating his determination that D.D. is bipolar. He stated that she will not be able to provide for her basic needs such as food, clothing, health, and safety, or be able to make a rational and informed decision about whether to submit to treatment. In his opinion, if she does not remain at the hospital for treatment her condition is likely to deteriorate. Dr. Bouchat explained that an overt act led to D.D.'s hospital admission. She was walking about at 5:30 in the morning and walked near moving vehicles. The police were called and she got into an altercation with police. She was exhibiting disorganization of thinking, bizarre gesturing, and appeared to be hyperkinetic. He stated that "there was also the feeling that she had intentionally jumped in front of traffic to make a suicide attempt." While at the hospital, she has been very irritable and uncooperative. She will not discuss her symptoms, she exhibits no insight into the behaviors that led to her admission, and she also appears to be labile. One of the social workers was concerned that she might physically be assaultive of another patient. Dr. Bouchat explained that D.D. had been hospitalized seven times in California and had been at Rusk State Hospital previously. He has not been able to have rational conversations with her. His interactions with her have been very superficial, ending with D.D. saying she has no illness and will not take medicine. He explained that D.D. is not connected with practical reality going on about her. She gets involved in side issues and trivia. He described her as preoccupied, guarded, and reluctant to give

2

information. Dr. Bouchat testified that Rusk State Hospital is the least restrictive available treatment option for D.D. at this time and that she could probably be considered for release within two to three weeks of beginning medication.

On cross examination, Dr. Bouchat explained that Dr. Guidry probably obtained the information that she jumped in front of cars from police records. He also stated that he had no knowledge of D.D. assaulting anyone while at the hospital.

D.D. testified, describing her various physical ailments. She stated that the police gave her a concussion. She claimed to have been walking on her own property, which she does every morning at 5:30, and denied that there were any cars nearby. She explained that she has three homes, one in Arizona, one in California, and one in Texas. She testified that she has been an attorney for twenty-five years. When asked if her license was still in effect, she responded,

> Yes, it's in excellent standing. I've been at it for 25 years in the world and the case that's been pending about all this — and this gentleman knows it from the last time I was here — is Rowe v. State, et al, about the entire thing about me being this and me being that and all these people are involved and they know about information that they refused to mail, that they refused to admit to because they don't want to lose their licenses and they don't want to lose their credibility, but it's okay to destroy mine.

The trial court rendered an order for temporary inpatient mental health services after determining that D.D. is mentally ill, likely to cause serious harm to herself, and is suffering severe and abnormal mental, emotional, or physical distress, experiencing substantial mental or physical deterioration of her ability to function independently, which is exhibited by her inability to provide for her basic needs, and that she is unable to make a rational and informed decision as to whether or not to submit to treatment.

The trial court immediately held the medication hearing. Dr. Bouchat testified as to the need for an order to administer medication. He explained that the requested medications would not conflict with the aspirin regimen she is on and he would monitor her closely for adverse side effects. D.D. testified, complaining that her Sixth Amendment right to counsel had been violated. She stated that she is not willing to take medication because she thinks it is dangerous. The court granted the State's application for an order to administer psychoactive medication. It rendered an order authorizing the State to administer certain medication to D.D. during her stay at Rusk State Hospital.

In her first issue, D.D. asserts the evidence is legally and factually insufficient to support the order of commitment. She contends that the State did not prove by clear and convincing evidence that she committed an overt act or exhibited a continuing pattern of behavior tending to confirm either the likelihood of serious harm to herself or her inability to care for herself. She argues there is no factual basis, only speculation by Dr. Bouchat.

**Standard of Review**

In a legal sufficiency review where the burden of proof is clear and convincing evidence, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and we disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id*. This does not mean that we are required to ignore all evidence not supporting the finding because that might bias a clear and convincing analysis. *Id*.

In addressing a factual sufficiency of the evidence challenge, we must consider all the evidence in the record, both that in support of and contrary to the trial court's findings. *In re C.H.*, 89 S.W.3d 17, 27-29 (Tex. 2002). This court must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id*. at 25. We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. *Id*. We must consider whether disputed evidence is such that a reasonable trier of fact could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. Appellate courts retain deference for the constitutional roles of the factfinder. *In re C.H.*, 89 S.W.3d at 26. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *See id*. at 27; *In re J.J.O.*, 131 S.W.3d 618, 632 (Tex. App.–Fort Worth 2004, no pet.).

**Applicable Law**

The trial judge may order a proposed patient to receive court ordered temporary inpatient mental health services if the judge or jury finds, from clear and convincing evidence, that the proposed patient is mentally ill and, as a result of the mental illness she is likely to cause serious harm to herself, is likely to cause serious harm to others, or is (i) suffering severe and abnormal mental, emotional, or physical distress, (ii) experiencing substantial mental or physical deterioration

of her ability to function independently, which is exhibited by her inability, except for reasons of indigence, to provide for her basic needs, including food, clothing, health, or safety, and (iii) unable to make a rational and informed decision as to whether or not to submit to treatment. TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (West 2010). To be clear and convincing under the statute, the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm either the likelihood of serious harm to the proposed patient or others, or the proposed patient's distress and the deterioration of his ability to function. TEX. HEALTH & SAFETY CODE ANN. § 574.034(d) (West 2010).

**Discussion**

The State provided expert testimony explaining that D.D. is mentally ill and describing an overt act by D.D. She was walking near moving vehicles at 5:30 in the morning, and it was reported that she had intentionally jumped in front of traffic in a suicide attempt. D.D. argues that the record does not show when this happened. However, Dr. Bouchat specifically stated that it was this act that led to this hospitalization. D.D. argues there is no evidence of the factual basis of the allegation that she attempted suicide. The record shows that D.D. was picked up by police because she was walking near traffic at 5:30 a.m. Dr. Bouchat explained that Dr. Guidry had access to the police records explaining why they picked her up. Further, the trial court could have determined that D.D. walked in front of traffic without determining that she was attempting suicide. Even in the absence of attempted suicide, that is an overt act tending to confirm the likelihood of serious harm to D.D.

The record also supports the trial court's finding that there has been a deterioration of D.D.'s ability to function. She exhibited disorganization of thinking, bizarre gesturing, and was hyperkinetic. She was irritable, uncooperative, and in denial about her illness. Dr. Bouchat also described her as labile, preoccupied, and not connected with practical reality. She had no insight into the behaviors that led to her admission to the hospital. This is evidence of D.D.'s distress and the deterioration of her ability to function. Thus, the evidence is legally sufficient to support the trial court's order. *See **In re J.F.C.**, 96 S.W.3d at 266.

In addressing D.D.'s factual sufficiency complaint, we consider the evidence the factfinder could reasonably have found to be clear and convincing. ***In re C.H.***, 89 S.W.3d at 25. D.D. admitted taking a walk at 5:30 a.m. and having some sort of altercation with police. Further, her testimony was largely nonresponsive and indicated a lack of rationality. In light of the entire record, we cannot say that the trial court could not reasonably form a firm belief or conviction that

5

D.D. committed an overt act and is distressed and her ability to function has deteriorated, thereby requiring inpatient mental health services. *See id.* Thus, the evidence is factually sufficient to support the trial court's findings. We overrule D.D.'s first issue.

## CONSTITUTIONAL VIOLATIONS

In her second and third issues, D.D. contends the trial court erred in rendering judgment in violation of state and federal guarantees of due process. She asserts that certain terms found in Section 574.034 of the Health and Safety Code are overly broad, vague, and ambiguous, making it violative of the due process clause of each constitution. In her fourth and fifth issues, D.D. argues that application of Section 574.034 results in a violation of her right to equal protection under both the state and federal constitutions.

In order to present an issue for appellate review, the record must show that a complaint was made to the trial court by a timely request, objection, or motion. TEX. R. APP. P. 33.1(a)(1). This requirement applies to constitutional claims a party wishes to raise on appeal. *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993). D.D. did not raise these constitutional complaints in the trial court. Therefore, D.D. has not preserved these complaints for review. *Id.* We overrule D.D.'s issues two, three, four, and five.

## DISPOSITION

The evidence is legally and factually sufficient to support the trial court's order for temporary inpatient mental health services. D.D.'s constitutional complaints have not been preserved.

We *affirm* the trial court's order for temporary inpatient mental health services.

**BRIAN HOYLE**
Justice

Opinion delivered July 10, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

6



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

JULY 10, 2013

NO. 12-12-00220-CV

**THE STATE OF TEXAS FOR THE BEST
INTEREST AND PROTECTION OF D.D.**

Appeal from the County Court at Law

of Cherokee County, Texas. (Tr.Ct.No. 39,858)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the trial court's order.

It is therefore ORDERED, ADJUDGED and DECREED that the trial court's order for temporary inpatient mental health services be **affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*