# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00373-CV

---

### In re Commitment of Alonzo Solis

---

### FROM THE 33RD DISTRICT COURT OF BURNET COUNTY
### NO. 51310, THE HONORABLE J. ALLAN GARRETT, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

The trial court signed a final judgment memorializing the jury's unanimous verdict finding that Alonzo Solis is a sexually violent predator and signed a civil commitment order involuntarily confining Solis to a residential facility upon his release from any Texas Department of Criminal Justice—Correctional Institutions Division (TDCJ-ID) facility. Solis contends that the evidence is legally and factually insufficient to support the finding that he has a "behavioral abnormality" that makes him likely to engage in a predatory act of sexual violence, that the trial court erred by admitting hearsay evidence of a prior offense, and that Chapter 841 of the Texas Health and Safety Code under which Solis was committed is facially unconstitutional under *In re Commitment of Stoddard*, 619 S.W.3d 665, 674 (Tex. 2020). We will affirm the judgment and order of commitment.

**DISCUSSION**

Solis challenges the legal and factual sufficiency of the evidence, the admission of hearsay regarding unadjudicated offenses, and the facial constitutionality of the standards governing the civil-commitment process as interpreted by the Texas Supreme Court.

**I.      The evidence was sufficient to support the judgment and order of commitment.**

**A.  Applicable legal standards**

We must assess the sufficiency of the evidence against the jury charge when, as here, there is no objection or appellate challenge to the charge. *Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 221 (Tex. 2005). The jury was required to find beyond a reasonable doubt whether Solis is a sexually violent predator. The charge defined terms as follows:

> You are instructed that a person is a "Sexually Violent Predator" for the purposes of Chapter 841 of the Texas Health and Safety Code if the person:
>
> 1.  is a repeat sexually violent offender; and
>
> 2.  suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence.
>
> A person is a "repeat sexually violent offender" for the purposes of Chapter 841 of the Texas Health and Safety Code if the person is convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses.
>
> "Behavioral Abnormality" means a congenital or acquired condition that, by affecting a person's emotional or volitional capacity predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person.
>
> "Predatory Act" means an act directed toward individuals, including family members, for the primary purpose of victimization.

2

The term "sexually violent offense" was defined to encompass several listed offenses including indecency with a child by sexual contact and continuous sexual abuse of a young child or children. *See* Tex. Health & Safety Code 841.002(8). The trial court granted a directed verdict that Solis is a repeat sexually violent offender based on his convictions; only the behavioral-abnormality issue was before the jury.

Solis argues that we should assess the evidence against the "legislatively intended definition of 'behavioral abnormality'" as determined by "traditional statutory-construction rules." He cites the Legislature's express findings supporting its enactment of Chapter 841 that "a small but extremely dangerous group of sexually violent predators exists and that those predators have a behavior abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of violence" that then-existing laws could not adequately address. Tex. Health & Safety Code § 841.001. He contends that these concerns must be incorporated into the sufficiency review. But he did not object to the jury charge at trial and does not on appeal assert error in the jury charge. We must address the sufficiency of the evidence against the unchallenged jury charge. *Romero*, 166 S.W.3d at 221. Further, the trial court instructed the jury using the definitions provided by the Legislature in the statute. *See* Tex. Health & Safety Code § 841.002(2) (behavioral abnormality), (5) (predatory act). A statute's plain language is the most reliable guide to the Legislature's intent. *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019). Solis appears to argue that the definitions are not aligned with the legislative findings for the purpose of Chapter 841, but the Legislature made those findings in the same 1999 enactment as it adopted the definitions of behavioral abnormality, sexually violent predator, repeat sexually violent offender, and predatory act used for the jury instructions. *See* Act of May 30, 1999, 76th

3

Leg., R.S., ch. 1188, § 4.01, 1999 Tex. Gen. Laws 4122, 4143-44. We will, as required, assess sufficiency of the evidence against the jury charge. *Romero*, 166 S.W.3d at 221.

A proceeding to civilly commit a sexually violent predator is the unusual civil case incorporating the "beyond a reasonable doubt" burden of proof typically reserved for criminal cases. *In re Commitment of Stoddard*, 619 S.W.3d 665, 674-75 (Tex. 2020) (citing *In re Commitment of Fisher*, 164 S.W.3d 637, 639-41 (Tex. 2005)). The jury is "the sole judge of the credibility of witnesses and the weight to be given to their testimony." *Id.* (citing *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003)).

In a legal-sufficiency review, we must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Id.* at 675 (citing *Jackson v. Virginia*, 443 U.S. 307, 319, (1979) (emphasis omitted)). We must "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so" and "disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* at 674 (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). The court may not disregard undisputed facts that do not support the finding. *See id*.

While a factual-sufficiency review requires similar deference to a jury's credibility and weight determination, it is not the same as a legal-sufficiency review. A factual-sufficiency review is premised on consideration of the entire record, while a legal sufficiency review examines only the evidence favorable to the judgment. *Id.* Disputed evidence that a reasonable factfinder could not have credited in favor of the finding is treated differently than in a legal-sufficiency review; in a factual-sufficiency review, the court considers whether that evidence, in light of the entire record, is so significant that the factfinder could not have

4

determined beyond a reasonable doubt that the statutory elements were met. *Id.* at 675 (citing *J.F.C.*, 96 S.W.3d at 264).

###### B.  The evidence

Solis and psychologist Dr. Stephen Thorne were the only witnesses at trial. Thorne met with Solis, reviewed records, evaluated him, and testified that Solis has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Thorne recited the definitions of behavior abnormality and predatory act given to the jury as his standard; the definitions are the same as those set by the Legislature. *See* Tex. Health & Safety Code § 841.002(2) (behavioral abnormality), (5) (predatory act). He testified he had to consider the totality of information. He said that no specific test result determines a behavior abnormality, but that he looked for are a combination of risk factors. He looked for issues related to sexual deviancy (such as sexual assaults on young children or incest) and antisocial behavior (such as rule violation and reckless, impulsive behavior), but said that both need not be present to meet the statutory definition. He noted that there are protective factors against reoffending, such as social relationships and social support, that may be meaningless if the person had those in the past and nevertheless simultaneously committed sexual offenses.

Thorne testified that Solis was charged five times for sex offenses with three convictions. He was first convicted for a sexually violent offense in 1981; he was seventeen and had vaginal intercourse at a party with an eleven-year-old girl, though he believed her to be thirteen or fourteen; Solis described this as a consensual encounter. Thorne said that this one offense did not persuade him Solis had a behavioral abnormality, though the age difference was significant. Solis was given a ten-year probated sentence that began in 1983. Solis did not

5

successfully complete his probation, which Thorne described as antisocial behavior. Specifically, Solis had failures to report to his probation officer, failure to pay court fees, and was arrested for another sex offense in 1991. His probation was revoked, and he was sentenced to six years in prison.

This July 1991 arrest was for having sex at least three times with a fifteen-year-old girl while he was twenty-three years old.[1] Solis said he was dating the girl, who was his boss's daughter; Solis testified that such age differences are common and acceptable in his culture, though he knew it was not legal. Solis testified that he "didn't really think about" whether it was okay to have sex with a fifteen-year-old. He committed this offense while on probation for having sex with a child. He was sentenced to four or five months time served in county jail.

After about two years in prison after his probation was revoked for the 1981 offense, Solis was released from prison on mandatory supervision in 1994. Solis testified at trial that, on his release from prison, he "really never thought about" whether it was illegal to have sexual contact with a child, though he did think he knew that he could go back to prison for having sex with a minor. Solis nevertheless had anal intercourse with his six-year-old daughter once; though Thorne thought Solis might have said it happened twice, Solis denied that. Solis testified that he was sorry that he assaulted her, and he guessed the offense was about power and control. He was still under mandatory supervision and had been attending sex-offender

---

[1] We note there appears to be a discrepancy in the timeline in that Solis was allegedly seventeen when he committed the first offense in 1981 and allegedly twenty-three when he committed the second offense for which he was arrested in 1992. The parties do not raise this as an issue, and there is no dispute regarding whether he was arrested, charged, or convicted of the various offenses discussed.

treatment weekly for seven or eight months at the time; Solis testified, however, that there was no treatment, only people talking about their daily activities.

Solis was also charged for an offense against his daughter's four-and-a-half-year-old half-sister but denied having committed the offense when talking to Thorne. Thorne testified that examination of the half-sister showed conditions consistent with having had vaginal and anal penetration. Though the charge involving the half-sister was dismissed, Thorne said the trial court considered it when assessing punishment, and he considered it in his evaluation. Solis pled guilty to assaulting his daughter and was sentenced to thirty years in prison.

Thorne testified that he considered another charge of a sexually violent offense against a child by Solis that was dismissed for inability to locate the victim. Thorne testified that he considers sexual offenses that are charged but do not result in convictions because charges are sometimes dismissed for reasons other than actual innocence.

Thorne diagnosed Solis with pedophilic disorder because three of the girls were prepubescent. To show pedophilic disorder requires a showing that the individual for a period of at least six months has fantasies, urges, behavior related to sexual interest in or attraction to children under the age of thirteen if those urges have a negative consequence to the offender or the victim. Two of Solis's acknowledged victims were under thirteen years old. Pedophilic disorder is thought to persist and must be managed, like alcoholics resisting the urge to drink alcohol.

Thorne noted that Solis had some nonsexual criminal history, including traffic tickets, illegal substance abuse, and some rule violations in prison that are minor antisocial behaviors. Thorne diagnosed Solis with a cannabis use disorder for daily use of marijuana and alcohol use disorder for drinking six to twelve beers a day. Thorne said Solis also used cocaine,

acid (Solis confirmed this was LSD), and methamphetamine. Thorne said Solis told him that he did not use substances at the time of the offenses.

Thorne described Solis's prison behavior as causing "nothing above average" level of concern. Thorne found Solis's taking of cognitive-intervention classes, obtaining his GED, completing a catechism and other faith-based programs, and getting a trade certificate for tailoring to be good developments. He had some visits with family members while in prison and communicates by telephone and writing with others. He has a partner or common-law wife, but he had not seen her since 2009 and had not spoken on the phone since 2014, though they kept in touch with monthly letters. Standout disciplinary cases included testing positive for marijuana use while in prison and attempting to have an inappropriate relationship with a prison staff member, though Solis said he only received mail from the employee; he was one of several inmates who received mail from the employee. The absence of public-sexual-inappropriateness disciplinary cases encouraged Thorne, though he said it was more an absence of a risk factor that Solis did not have a predisposition toward sexually assaulting adults rather than an affirmative protective factor against a predisposition toward sexually assaulting children.

Solis acknowledged assaulting minors. He had been caught and punished, then he reoffended. He violated the terms of his release from incarceration, including committing sexual offenses after having been convicted for sex offenses and undergoing months of sex-offender treatment. Thorne testified that the fact that Solis had victims outside of his family showed him to be more likely to reoffend. Thorne testified that the range of time over which he committed the offenses also supported the diagnosis that Solis has a behavior abnormality that makes him likely to engage in a predatory act of sexual violence.

8

Thorne also found that Solis was not a psychopath. Thorne used the PCL-R test on which scores over thirty on a forty-point scale are indicative of psychopathy; Thorne gave Solis eighteen points. The test lists twenty items, and the evaluator scores the individual a 0 (trait not present), a 1 (maybe present), or a 2 (definitely applies). Thorne testified that he uses "1" to mean some aspects of the trait are present. Thorne scored Solis a "2" on callousness/lack of empathy and promiscuity because he repeatedly sexually assaulted children. He also gave Solis a "2" for irresponsibility because his actions led to his incarceration for 25 years and for his lack of relationships with three of his four biological children even before incarceration. Solis's score indicated moderate traits indicative of psychopathy, but not enough to qualify as a psychopath. Thorne testified that the absence of psychopathy is a good thing, but that it did not rule out diagnosing Solis as having a behavioral abnormality.

Thorne also administered a Static-99R to assess risk factors related to likelihood to reoffend. The evaluation compares the test subject's score to other sex offenders' scores to see where they fall on the curve of those who have and have not reoffended. He said that the test is not a definitive yes or no regarding likelihood to reoffend. He said that the Static-99R is just one tool and that the creators of the instrument specifically state that evaluators should consider other risk factors and factors outside of the test. He listed the age of the victims, persistence of behavior after punishment, and unsuccessful discharge from sex-offender treatment—particularly for reoffending—as risk factors not included in the instrument. The scores range from negative three to positive twelve; Solis scored a positive two, which Thorne described as a "typical" sex-offender likelihood of reoffending in that two to five percent have reoffended. Thorne said it would be incorrect to say based on this test that Solis had a two to five percent likelihood of being known to reoffend; the "known to reoffend" terminology was somewhat

9

vague because different states reported different stages of the reported/arrested/convicted continuum under that term, plus unreported offenses would not be counted. Somebody could score high and not have a behavioral abnormality, or have a low score and have a behavioral abnormality. He also testified more generally that a person could have a behavioral abnormality and not be likely to engage in a sexually violent predatory act.

Despite the positives of the classes and programs that Solis completed in prison, other factors persuaded Thorne in making his diagnosis. Thorne said that Solis's age (fifty-five at the time of trial) could be a factor showing decreased likelihood of reoffending because likelihood of reoffending generally decreases after fifty and again after sixty, but that may be less true of incestuous assaulters than persons who assault strangers or persons outside their families. The last time Solis was in the community, he had sex-offender treatment, was under supervision, was doing anti-substance-abuse work, had a social support system, and had a job, but still sexually assaulted his own child. Thorne said that, though the offenses were in the past, his evaluation of Solis was about his present condition. The pattern of being unable to complete treatment and continuing to sexually assault minors despite having experienced negative consequences was a factor in Thorne's decision regardless of Solis's advancing age.

Thorne testified that, even though he diagnosed Solis with a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence, he was not making a prediction about Solis. Thorne defined likely to reoffend as probable—which he described as a higher standard to show than maybe. Thorne opined that Solis's emotional or volitional capacity was and is affected by his sexual thoughts, urges, and fantasies about minor children.

10

Solis testified that he had learned that having sex with children is wrong and that he does not have fantasies about children. He said that he had been around some eight-to-sixteen-year-olds as a tailor making uniforms for participants in "Scared Straight" programs at the prison; he said he did not talk to them or try to touch them and they did not arouse him or prompt fantasies, but he was not left alone with them.

## C.     Conclusion

Viewed under both sufficiency standards, the evidence is sufficient to support the judgment. While there is some evidence that does not favor the necessary finding—for example, the "2" score on the Static-99R—that evidence was more a neutral factor than a factor preventing the jury from making an affirmative finding. We conclude that legally and factually sufficient evidence supports the jury's finding that Solis suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. We resolve issues one and two in favor of the judgment.

## II.     Any error in the admission of evidence of the prior offense was harmless.

By issue three, Solis contends that the trial court erred by allowing Thorne to testify about an offense for which Solis was not convicted. Though there was more discussion of the offense outside the presence of the jury, Thorne told the jury that Solis was charged with an additional violent offense against another child but was ultimately not convicted of those charges because the cause was dismissed due to inability to locate the victim. Thorne testified that he considered both charges and convictions when making his assessment. The State argues that this was permissible under Texas Rule of Evidence 705, which allows a testifying expert to reveal the facts and data underlying his opinion, even if those facts and data are hearsay. The court limited

11

the witness to testifying about how the information helped form the basis of his opinion or how it fit into his opinion.

We need not delve into whether the court erred by admitting the evidence because we conclude that any error in its admission was harmless. Reversal for erroneously admitted evidence is warranted only if the error probably resulted in the rendition of an improper judgment. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 136 (Tex. 2012) (citing Tex. R. App. P. 44.1). We must evaluate the entire case from voir dire to closing argument, considering the evidence as a whole, the strength or weakness of the case, and the verdict. *Id.* In determining whether the erroneous admission of evidence probably led to an improper judgment, courts look to the role the evidence played in the context of the trial and the efforts made by counsel to emphasize the erroneous evidence, as well as whether contrary evidence existed that the improperly admitted evidence was calculated to overcome. *Id.* Solis urges that we must also consider whether admission of improper evidence was calculated or inadvertent and interpret the State's insistence on introducing inadmissible testimony as indicating how important the State thought the evidence was to its case, citing *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 874 (Tex. 2008).

While it is unclear why the State insisted on introducing the dismissed charges as evidence in this case as limited by the court, the evidence that reached the jury took up nine lines in the reporter's record. There were no details about the assault. The jury's decision was firmly grounded on Solis's convictions for having sex with an eleven-year-old, having sex with a fifteen-year-old while on probation for the first offense, and anally raping his six-year-old daughter while on mandatory supervision for sexually assaulting a child. His admission that he did not think about whether these offenses were right or wrong while committing them after he

12

had been punished for doing the same action was not meaningfully augmented by the glancing mention of an additional offense for which he was not convicted. In light of the entire record, we find no harm in the admission of this evidence. We resolve issue three in favor of the judgment.

### III.   Solis has not shown Chapter 841 is unconstitutional.

Solis argues that the Texas Supreme Court's opinion in *Stoddard* causes Chapter 841 to be facially unconstitutional because it permits the civil commitment of inmates on too low a standard. *See* 619 S.W.3d at 675 The United States Supreme Court allows involuntary civil commitments following the conclusion of prison terms when the confinement occurs under proper procedures and evidentiary standards, there is a finding of dangerousness to oneself or others, and proof of dangerousness is coupled with proof of some additional factor like mental illness or mental abnormality. *Kansas v. Crane*, 534 U.S. 407, 408-09 (2002); *see also Kansas v. Hendricks*, 521 U.S. 346, 357-58 (1997). He argues that reading "behavioral abnormality" as meaning simply some likelihood of offending would collapse the separate factors of behavioral abnormality and dangerousness into one and impermissibly allow civil commitment based on a mere finding that the offender is "likely to reoffend." He argues that the Texas Supreme Court improperly conflated these two elements when it held that that the terms "condition" and "predisposition" in the definition of "behavioral abnormality" mean the same thing and that "the import of predisposition and likelihood is exactly the same: increased risk." *In re Commitment of Bohannon*, 388 S.W.3d 296, 302-03 (Tex. 2012).

We find no basis for reversal presented on the record in this case. Solis did not make this argument to the trial court, so it is not clear that it is preserved for our review. *See* Tex. R. App. P. 33.1; *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993); *see also Karenev*

13

*v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009). *But see In re Ginsberg*, 630 S.W.3d 1, 11 (Tex. Spec. Ct. Rev. 2018) (courts can address constitutionality sua sponte in exceptional cases). In any event, Solis does not argue that the words of Chapter 841 as adopted are unconstitutional. Further, the Texas definition of behavioral abnormality does not eliminate one of the Supreme Court's elements, it incorporates both. To support commitment under Chapter 841, the factfinder must find the person has "a congenital or acquired condition that by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." Tex. Health & Safety Code § 841.001(2). The Texas Supreme Court in *Stoddard* noted that, to find the mental condition requisite to satisfy the statute, one must also find a likelihood of dangerousness to others. 619 S.W.3d at 678. The Texas Supreme Court has not by its opinions permitted Texas courts to civilly commit anyone without proof of mental abnormality plus dangerousness and has not through its opinions interpreted Chapter 841 into unconstitutionality as Solis urges.

We resolve issue four in favor of the judgment.

## CONCLUSION

Having found no errors by the trial court in the issues presented, we affirm the judgment.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed: August 31, 2022

14